WEBB v. WATSON *et al.*

1. Redemption: TIME, PLACE, MEDIUM. To redeem from a sale made under execution, the defendant must, within one year, pay the required amount of money into the clerk's office for the use of the persons thereunto entitled.

2. —— BY BANK CHECK. If in good faith the defendant pays, and the clerk receives, before the expiration of the time of redemption, an ordinary banker's check, and especially of a banker resident of the place where the business is transacted, upon which he realizes the money when demanded, though after the expiration of the time, having the same ready to pay to the holder of the certificate promptly and without trouble to him, the payment is sufficient.

3. —— When without fraud on the part of the debtor the clerk receives in redemption the equivalent of money, and the debtor, in good faith, takes his acquittance, the creditor cannot, whatever may be the liability of the officer to him, be heard to repudiate the act of the officer to the extent of defeating the redemption.

*Appeal from Benton District Court.*

TUESDAY, JUNE 13.

In September, 1860, Field, Benedict & Co., of Chicago, recovered judgment in the Benton District Court, against the plaintiff (Webb) for about $230; and on the 3d day of January, 1863, under an execution issued thereon, certain lands were sold, forty acres to the plaintiff in execution for $238.05, and sixteen and one-half acres to C. H. Conklin for $45, which satisfied the judgment, with interest and all costs. The purchasers each obtained certificates, which, on the 9th of February next after, they assigned to the defendant Watson. On the 6th of January, 1864, the sheriff executed to Watson a deed for the land so purchased, and on the 15th of the next month this proceeding was instituted, the bill claiming that plaintiff had, before the expiration of twelve months from the day of sale, redeemed said lands, by paying to the clerk the full amounts of the several bids, with interest thereon as required by law. And whether there was such a redemption, is the sole question made by the record. The cause was referred to A. S. BELT, Esq., who, after hearing the evidence upon the issues joined, found for the defendant, and this being confirmed (*pro forma*, the judge presiding having been of counsel), plaintiff appeals.

For other facts see the opinion.

*J. C. Traer* for the appellant.

*McCartney* and *Preston & Son* for the appellee.

WRIGHT, Ch. J. — The land in controversy was worth, at the time of the alleged redemption, about two thousand 1. REDEMP-TION: time: place: medium. dollars, upon which there were liens prior to the judgment of Field, Benedict & Co., to the amount of six hundred dollars. As to the value, the

testimony is conflicting, but this was the sum fixed by the referee, and is substantially correct.

Plaintiff and defendant (Watson) reside in the same place, and within a few rods of each other. At the time of the redemption, plaintiff was not aware that Watson held the certificates of purchase; nor did he know that he claimed any interest in the property, or in the sale thereof, but did suppose and believe that the money would go to the plaintiff in execution at Chicago, either directly or through their attorney (C. H. Conklin, Esq.), who had bought the property, part in his own name and part in the name of his clients.

On the last day of December, 1863, plaintiff offered to pay to the clerk $285.50, *currency,* in part redemption of said lands. At this time the execution had not been returned by the sheriff, and there was no means of ascertaining precisely the amount required for the redemption. The clerk declined to take this money, upon the ground that it was not a legal tender, and requested plaintiff to go to a bank and get it exchanged. At plaintiff's suggestion the clerk consented to accept a certificate of deposit, payable in United States treasury notes. Webb, on the same day returned and gave the clerk the following instrument:

"VINTON, IOWA, *Dec.* 31, 1863.

"$285$\frac{50}{100}$.

"J. W. O. Webb has credit in our office two hundred and eighty-five $\frac{50}{100}$ dollars in currency.

"J. C. TRAER & CO."

This certificate the clerk received and made an entry on the judgment docket and sale book, to the effect that this amount had been paid to redeem from the said sheriff's sale. There was no United States revenue stamp upon this instrument, nor was it indorsed or assigned by or to any person.

Afterwards, on the 2d of January, 1864, Webb paid the additional amount necessary to complete the redemption, the clerk gave him a receipt so showing, and made this entry in the sale book:

"January 2d, 1864. J. W. O. Webb deposited with the clerk $313.55 [in currency] for the purpose of redeeming in full from the foregoing sale.

"JAMES CHAPIN,
"*Clerk District Court.*"

The words in brackets were interlined by the clerk about a week after the deposit, and after he learned that there would probably be difficulty. On the 4th of the month Watson called upon the clerk to ascertain whether there had been a redemption, and upon being advised of what had been done, insisted that he was entitled to a deed, which he accordingly obtained on the 6th. The testimony warrants the conclusion that the clerk had, at the time of the attempted redemption, a deposit account with Traer & Co., or did have a short time before, and that Webb understood that if he left the money there it would answer the same purpose as if deposited with the clerk. At the time of the deposit, the bankers expressed their willingness to pay in "greenbacks" if required, but it was supposed by all parties that the funds would be sent to Chicago by draft, and they had as well remain on deposit until plaintiff in execution made some order as to their disposition. At the time Watson called upon the clerk, "legal tender" notes could have been obtained at the bank (which was but a few rods distant) if he had been willing to receive the same, and the bankers were at all times willing and ready to pay in said funds, and they were afterwards (on the 25th of February) tendered and declined. Plaintiff acted in the utmost good faith, expressed his anxiety to do all that was necessary to redeem his land, and left the

office with the clerk's receipt, with the full understanding and belief that the debt was paid and the redemption complete.

In view of these facts and other considerations, to be hereafter noticed, the question is, whether plaintiff is entitled to have the sheriff's deed set aside and his title protected against the sale under the execution. And this involves an inquiry into the sufficiency of the alleged redemption. Under the statute the defendant in execution may redeem at any time within one year from the day of sale, by paying the required amount of money into the clerk's office for the use of the persons thereunto entitled. (Rev., §§ 3332, 3348.) In thus redeeming, there is a time fixed (within one year), the officer named (the clerk), and a medium specified (money). The plaintiff was within the time, made the payment at the right place or to the proper

2. —— by person, and the only doubt is, whether within the
bank
check. meaning of the statute and under the authorities he paid the money, or whether what was done amounted to the payment of the sum required for the redemption.

The case of *Dougherty* v. *Hughes*, 3 G. Greene, 92, holds expressly that a bank certificate of deposit is not money or its equivalent, and is not therefore available to redeem land sold under execution. And, to the same effect, see *The People* v. *Baker*, 20 Wend., 602. And so far as these and similar cases assert the proposition, that a check or certificate of deposit thus handed or passed to the officer is not payment, their correctness need not be controverted. Should such a certificate or check be paid, however, either before the expiration of the time of redemption, or in time to meet the demand of the person for whose use the same was paid by the redemptioner, there is no suggestion in either of the cases cited that the redemption would not be effectual. There can be no question as to its sufficiency if the check is paid before the time expires; for then the

method of obtaining the money ceases to be of any prac-
tical importance to any of the parties interested, and
especially the purchaser or the party entitled thereto.
And if in good faith the defendant pays, and the clerk
receives, the ordinary banker's check, and especially of a
banker, resident in the place where the business is transacted,
upon which he realizes the money when demanded, though
after the expiration of the time, having the same ready
to pay to the holder of the certificate promptly and without
trouble to him, it seems to us that it would not be diffi-
cult upon principle to uphold the redemption, and to hold
that the creditor or purchaser was bound to take the money
and surrender his claim to the land. It is true that such a
certificate does not circulate, nor does it have the same
exchangeable value as money, and yet we know that in
commercial circles, for the convenience and safety of trade,
they do pass as readily among all classes of business men
as the ordinary bank issues. And to say that when a clerk
receives and the debtor uses such a certificate in good faith,
as a means of realizing all that the purchaser has any
right to ask — his money, and from which, in the carrying
out of an ordinary, fair, common and legitimate transac-
tion, the officer does in fact get the means, and have
the same ready to meet all demands upon him; to hold
in such a case that the land is forfeited, it seems to us
would make forfeiture, and not compensation, the equitable
rule. Not only so, but such a rule would ignore the
means adopted, and in ordinary use, in all financial circles,
for the more economical and expeditious transaction of
business. This no court should do, unless from principle
or authority the necessity is most apparent.

As applied to the case before us, however, there are
seeming, if not actual, difficulties in the way of giving the
plaintiff the benefit of even such a rule. The instrument
left with the clerk can hardly, having a strict regard to

language, be called a certificate of deposit, and is certainly not a check. Then if either, it was void for the want of the required revenue stamp. Then, again, it was in the name of Webb, without words of negotiability, and was in no manner indorsed or transferred. If plaintiff, therefore, is entitled to relief, it must be upon some other ground. And, in our opinion, there is another ground, arising out of the facts as they actually transpired, upon which the case may be put without any violation of principle, but in strict accordance with those equitable rules which it should ever be the aim and pleasure of courts to administer.

The case above cited (3 G. Greene, 92), admits that if the officer receives bank notes, constituting, as they do, to a great extent, the circulating medium of the country, the redemption would be complete. And to the same effect see *Ex parte Board*, 4 Cow., 420, where it was held, that the sheriff might receive the current bank bills of the country, though the creditor forbid it, and also, *Hall* v. *Fisher*, 9 Barb., 17, and *Ex parte Becker*, 4 Hill, 613. In this last case the payment was in foreign coin, not a legal tender. It is not necessary to go as far as the case of *Hall* v. *Fisher*, for, in this case, there is no pretense that the clerk had any instructions on the subject. It is only required of us to say, that if the clerk received from the debtor bank bills, constituting and forming a part of the circulating medium of the country, such as are received and paid as money in all the business transactions of the country, the debtor shall not suffer the forfeiture of his land should the party claiming the sheriff's deed refuse to accept the same. To a certain extent the clerk must be recognized as the agent of the purchaser. His powers are by no means so unlimited. as to authorize him to receive anything else than money or its equivalent for the redemption. But when, without fraud on the part of the debtor, he receives such equivalent, and the debtor in good faith takes his acquittance, what-

ever may be his ultimate liability to the clerk, the creditor or purchaser cannot be heard to repudiate the act of the officer to the extent of defeating the redemption. In all such cases equity must not lose sight of the clerk's power and relations, nor of the good faith influencing and controlling the action of the redemptioner. And here it may be proper to remark, that the debtor in all such cases is required to make no showing in order to establish his right to redeem. He stands undeniably interested in the property, and need not, as in the case of an incumbrancer, produce evidence of his judgment or lien, and the amount thereof. And, therefore, it is that the cases of *The People* v. *Fleming*, 2 Comst., 484; *Miller* v. *Lewis*, 4 Id., 553; *The People* v. *Sheriff of Broome*, 19 Wend., 87; *Haskell* v. *Manlen*, 14 Cal., 54; *People* v. *Ransom*, 2 N. Y. (2 Comst.), 490; *S. C.*, 4 Denio, 145, as well as most of those cited by counsel, have no application to the case before us. In all these the incumbrancer proposed to redeem, and the right was either recognized or denied, as he complied or failed to comply with the provisions of the statute requiring the production of the proper evidence of the existence and the amount of his lien or judgment. And we cannot resist the belief that the same strictness of procedure is not required of the debtor, who seeks to save his land from forfeiture. An incumbrancer is a third person, who, by redeeming, seeks to acquire a new right, to place himself in a better position, and to additionally burden the debtor if not the purchaser at the sale. The debtor, however, is already in an attitude which entitles him to redeem, by simply paying the money to the proper officer, and he should be protected in this effort as far as consistent with correct principle, and the rights of the respective parties.

Dismissing, however, this line of argument, we come briefly to the application of the general rules above stated to the facts of this case. And a fair deduction from all the

testimony, in our opinion, is, that Webb paid the money to Traer & Co., the bankers, for the clerk, for his use, and subject to his control. In other words, we believe that when this matter was closed up, the debtor and the clerk understood that this money was as much subject to the command and order of the clerk as though he had received it from Webb and deposited it in the bank. And the testimony all tends to show that the bankers so understood it. And in this view, if the debtor might redeem by paying currency, the same being received by the clerk, then it makes no difference that it was currency, and not legal tender notes, which was thus deposited. For, if received by the clerk, whether he deposited in the bank or kept the funds in his own safe or pocket, could not affect defendants' rights; and if the deposit was made there by the clerk's order, the legal effect and the rights of the parties would be the same. If we add to this, the consideration that the bankers were willing to pay legal tender bills—were always ready to—did propose and offer to do so, and that defendant could have received the uttermost farthing of his claim in a medium indisputably good and sufficient at the very time he first made known his interest, if he had been so disposed, the equity of plaintiffs' case becomes greatly strengthened.

To avoid all possible misapprehension, it is proper to say, before closing this opinion, that the case is put and decided upon its own, for the most part, equitable circumstances. It is not intended to hold that the clerk is the agent of the holder of the certificate of purchase, to the extent that, if he receives currency for the redemption, the holder will be concluded thereby, and compelled to accept the same. But what we do hold is, that, if, in good faith on the part of the redemptioner and the clerk, currency shall be paid and received, which is accepted and deposited, with the honest intention of redeeming from the sale, the holder of the

certificate, or the party entitled to the money, cannot repudiate the transaction and defeat the redemption, if, without trouble to him or unnecessary delay, "legal tender" funds are paid, or tendered, upon his refusal to accept the currency. This conclusion does injustice to no one, but gives to the one party all he has any right in conscience to demand, and to the other no more than the legitimate fruits of his honest and accepted (by the officer of the law) efforts to save his property from forfeiture.

Reversed.