## STENGRIM NOPSON

### *vs.*

## HIRAM T. HORTON, *et al.*

As respects redemption from foreclosure sale, a second mortgagee is "a creditor having a lien," within the meaning of *section* 16, *chap.* 81, *Gen. Stat.*

A mortgagee who, *after* his foreclosure sale, has redeemed the mortgaged premises from a tax sale, is not authorized to tack the sum paid for such redemption to the sum for which the premises were sold at the foreclosure sale, and to require a second mortgagee, seeking to redeem, to pay the amount of the two sums as a prerequisite to his redemption.

O. mortgaged the premises in controversy to plaintiff. Subsequently O. conveyed the same to S. S. mortgaged the same, in whole or in part, to B., who assigned his mortgage to H. The plaintiff having foreclosed, H., as a junior mortgagee, applied to the sheriff for a redemption. *Held*, that it was not necessary for H. (under *Sec.* 14, *Chap.* 81, *Gen. Stat.*) to produce to the sheriff the deed from O. to S.

The payment to the sheriff of the redemption money in United States treasury notes and national bank notes, which were received without objection, *held* sufficient.

The plaintiff brought this action in the district court for Olmsted county, for the cancellation of a certificate issued to the defendant Horton, upon the redemption by him of certain mortgaged premises from a foreclosure sale to the plaintiff. Upon a trial by the court without a jury, the judge found the facts to be as follows:

On the 13th December, 1866, one Peter Olson, being the owner in fee of the w. ½ and the ne. ¼ of the nw. ¼, and of the nw. ¼ of the ne. ¼ of section 18, township 105, in Olmsted county, mortgaged the same to the plaintiff, the mortgage containing the usual power of sale and being duly recorded. On the 6th February, 1871, the plaintiff caused this mortgage

to be foreclosed by advertisement and sale, the entire mortgaged premises being struck off as one farm to the plaintiff as the purchaser, for a sum equal to the amount then due upon the mortgage, with the proper costs and expenses of foreclosure. The usual certificate of sale was executed and delivered to the plaintiff, and was duly recorded on the day of the sale.

On the 12th June, 1869, the mortgaged premises were sold to the defendant Horton for the taxes of 1868, and on the 20th July, 1870, they were again sold with other lands to Horton for the taxes of 1869, certificates for such tax sales being duly executed and delivered to Horton by the proper officer.

On the 20th February, 1871, the plaintiff redeemed the mortgaged lands from the tax sales to Horton, and the money paid to the county treasurer upon such redemption was by him paid over to and was retained by Horton.

In December, 1868, one Sleator, having become the owner of the mortgaged lands, mortgaged a portion thereof to one Mott and the remainder to one Bastian, both which mortgages had been, prior to the 9th February, 1872, assigned to the defendant, Horton.

The year allowed the mortgagor and his assigns for redemption from the foreclosure sale to the plaintiff, expired February 5, 1872. Within five days thereafter, viz.: on the 9th February, 1872, the defendant, Horton, as a creditor, holding a lien by virtue of his two mortgages, and being desirous of redeeming from the sale to the plaintiff, presented to the defendant, Ellison, the then sheriff of Olmsted county, the following papers, viz. : duly certified copies of the record of his two mortgages, the assignments of these mortgages to himself, his own affidavit showing the amount actually due on each of his mortgages ; and paid to the sheriff the sum for

which the premises were sold to the plaintiff, with interest at the rate of seven per cent. per annum, with the sheriff's fees, whereupon the sheriff, executed and delivered to him a certificate of redemption in due form of law, which was on the same day duly recorded. The money thus paid by the defendant, Horton, to the sheriff, consisted of United States treasury notes and national bank notes, all which the sheriff received without objection. The taxes paid to the county treasurer by the plaintiff, were not paid by Horton when he redeemed the premises from the foreclosure sale.

As conclusions of law, the judge found that at the time of the redemption, Horton, by virtue of his two mortgages, had a lien upon the lands redeemed by him, and that his redemption was legal. Judgment was thereupon ordered and entered for the defendants, from which the plaintiff appeals.

CHARLES C. WILLSON, for Appellant.

STEARNS & START, for Respondents.

*By the Court.*—BERRY, J.—I. In case of foreclosure by advertisement, "the mortgagor, his heirs, executors, administrators or assigns" may redeem within twelve months after the sale. *Gen. Stat. chap.* 81, *sec.* 13. By section 16, "if no such redemption is made, the senior creditor, having a lien, legal or equitable, on the real estate or some part thereof, subsequent to the mortgage, may redeem within five days after the expiration of such twelve months; and each subsequent creditor having such lien, within five days after the time allowed all prior lien holders, as aforesaid, may redeem," &c. A second mortgagee is "a creditor having a lien" within the meaning of this section, and is therefore entitled to redeem, in accordance with the provisions thereof, after the twelve months have

Nopson v. Horton et al.

expired. His ownership of a debt, and a mortgage securing the same, make him " a creditor having a lien." For certain purposes he may properly be regarded as an assign, (see *Buttrick vs. Wentworth*, 6 *Allen*, 79,) as perhaps under the provisions of *sec*: 18, *chap*. 81, *Gen. Stat*. But if he be in any light an assign, there is no inconsistency in holding him to possess the added character of a " creditor having a lien." It is further to be remarked that, unless he may be regarded as such creditor, the right of redemption allowed him by the statute is wholly ineffectual for his protection. This is so, because the only effect of a redemption by a simple assign is to *annul the sale*, (*sec*. 15, *ib*.) and not to subrogate the redemptioner to the rights of the party from whom the redemption is made, as in the case of redemption by a creditor having a lien, (*sec*. 15, *supra*.)

II. In case mortgaged premises are sold for taxes before a foreclosure sale, and the mortgagee, after his foreclosure sale, redeems from the tax sale by making the requisite payment to the county treasurer, a second mortgagee may redeem, upon paying the sum for which the premises were sold at the foreclosure sale, with interest at seven per cent. per annum, and without paying the amount paid to redeem from the tax sale. This is so, because the statute, (*Gen. Stat., chap*. 81, *secs*. 13-16,) so provides. *Section* 152, *chap*. 11, *Gen. Stat*., enacts that " any person who has a lien by mortgage or otherwise, upon any land on which the taxes have not been paid, may pay such taxes, and the interest, penalty, and charges thereon, and the receipt of the person authorized to receive such tax shall constitute an additional lien on such land to the amount therein specified and the interest thereon, and the amount so paid and the interest thereon shall be collectible with, and in the same manner as, the amount secured by the original lien." In case of a lien by mortgage, this section

simply provides that the mortgagee may reimburse himself for taxes paid by collecting the amount paid and interest as a part of, and at the same time and in the same manner as the amount secured by the original lien, i. e., he may collect it by his foreclosure sale. *Spencer vs. Levering,* 8 *Minn.* 461 ; *Martin vs. Lennon,* 19 *Minn.* 76. This does not authorize a mortgagee, who, *after* his foreclosure sale, has redeemed the mortgaged premises from a tax sale, to tack the sum paid for such redemption to the sum for which the premises were sold at the foreclosure sale, and to require a second mortgagee, seeking to redeem, to pay the amount of the two sums as a pre-requisite to his redemption. *Section* 16, *chap.* 81, *Gen. Stat.,* when it speaks of the payment by a creditor having a lien " of all liens prior to his own, held by the party from whom the redemption is made," evidently has reference to creditor's liens held by such party, either in his original capacity of creditor, or as having succeeded to the rights of those who stood in the relation of creditors.

III. Olson mortgaged the premises in question in this case to plaintiff; subsequently Olson conveyed the premises to Sleator. Sleator mortgaged the same, or a part thereof, to Bastian, who assigned his mortgage to defendant, Horton. The plaintiff having foreclosed, Horton, as a junior mortgagee, applied to the sheriff for a redemption. His application was not defective, (as plaintiff insists,) on account of his failure to produce to the sheriff the deed from Olson to Sleator. Though this deed was a link in Horton's chain of title, the statute, which specifies the steps necessary to a redemption, does not require its production. *Sec.* 14, *chap.* 81, *Gen. Stat.*

IV. The court, by which this action was tried below, finds that the redemption money paid to the sheriff by defendant " consisted in part of United States treasury notes—commonly called greenbacks—and the balance was in national bank cur-

Nopson v. Horton et al.

rency, all of which the said sheriff accepted without objection, and immediately, and on the same day, deposited in a bank in the city of Rochester, in said county of Olmsted, and it was credited to him in his bank book, which deposit and credit were, if required by him, payable in United States treasury notes.  That at the time of said redemption all the national bank bills so paid were genuine and current in said city of Rochester, and of the full value expressed on their face; that there was no premium on United States treasury notes and no discount on national bank currency, but both circulated at par, and each were exchangeable for the other without premium or discount upon either."

It is contended that this payment was insufficient; that it should have been made in coin.  Whether this was or was not a case of a *debt*, for which treasury notes were a legal tender, we deem it unnecessary to inquire.  That which was received by the sheriff was *money* in fact, then as now, a " circulating medium," used and treated by everybody as *money*. If the sheriff might have insisted upon payment in coin or in treasury notes, he did not, but received what was offered him, and without objection.  Under such circumstances he must be taken to have waived any ground of objection to the character of the money paid him.

We can perceive no reason why the fact, that in receiving the money he acted, (as plaintiff contends,) as the officer of the law, and not as the agent of the plaintiff, should render it necessary to take a more contracted view of his rights or the effect of his actions, than if he were acting as a private person; nor any reason why, (in the absence of legal prohibition,) he should not be permitted to transact business as other persons do.

Judgment affirmed.