Boyd v. Olvey.

No. 9031.

## BOYD v. OLVEY.

PLEADING.—*Action to Quiet Title.*—*Averments as to Claim of Defendant.*—It is not necessary that the complaint, in an action to quiet title, should show with particularity the nature of the defendant's claim ; and where the complaint, in such an action by the owner of real estate sold on execution, avers that the defendant refused to recognize the redemption of the land by the plaintiff, made prior to the expiration of the year allowed for redemption, but thereafter demanded and received a deed from the sheriff, such averments sufficiently show a claim by the defendant under color of title, adverse to the plaintiff, from which the owner is entitled to have the property freed.

SAME.—*Practice.*—*Demurrer.*—A pleading which shows that the party is entitled to some relief, though not to all the relief prayed, is sufficient on demurrer.

SAME.— *Inferences from Facts.*— *Conclusions.*— Where facts are properly pleaded, courts will draw the proper inferences ; but the statement of the pleader's conclusions neither adds to nor detracts from the facts pleaded.

Boyd v. Olvey.

SAME.—*Exhibits.*—It is only where a pleading is founded upon a written instrument that it is necessary to set out the instrument.

REDEMPTION.—*Payment to Clerk of Bank Notes.*—*Complaint.*—The holder of a sheriff's certificate of purchase of real estate sold on execution can not defeat a redemption in a case where the clerk receives in good faith the amount necessary to redeem in bank notes, deposits them in bank and has continuously, from the time of the receipt, lawful money ready for the holder of the certificate, which he is willing to deliver, and does tender to him, and where such facts appear in the complaint, in an action to set aside the sheriff's deed executed after such redemption, and to quiet title to the land, the complaint is sufficient on demurrer.

MONEY.—*Legal Tender.*—In legal acceptation, money means gold or silver coinage or notes made a legal tender by a valid statutory enactment. National bank notes are, therefore, not money. A creditor may receive bank notes as money, but he can not be compelled to do so.

SAME.—*County Clerk may require Legal Tender Money in Payment of Redemption of Land Sold on Execution.*—*Waiver.*—A county clerk may require gold or silver coin or notes made by law a legal tender, in payment of the amount necessary to redeem land sold on execution, but he may receive payment in its equivalent, and, where he does so, and holds himself in readiness to pay in legal tender, the holder of the sheriff's certificate can not, for his failure to require payment in legal tender, defeat the redemption.

BANKRUPTCY.—*Bankrupt's Property.*—*Title Revests on Discharge Without Proof of Claims.*—*Judgment of Discharge can not be Collaterally Attacked.*—Where a person has been adjudged a bankrupt and his property conveyed to an assignee, and no claims are proved against the bankrupt, and both bankrupt and the assignee are legally discharged, the property in the hands of the assignee revests in the bankrupt without any formal conveyance. Such judgment of discharge can not be collaterally impeached, even as to the fact that the bankrupt was not entitled to a discharge.

From the Hancock Circuit Court.

*T. S. Rollins* and *M. Marsh,* for appellant.

*J. A. New* and *J. W. Jones,* for appellee.

ELLIOTT, C. J.—The material facts stated in the first paragraph of the appellee's complaint, may be thus summarized: On the 28th day of August, 1876, appellee executed a mortgage to Joseph Deitch, which was foreclosed at the suit of the mortgagee on the 27th day of October, 1877, sale was made on the decree, and the mortgaged real estate bought in by the mortgagee on the 19th day of November. Deitch re-

ceived a certificate from the sheriff, and afterwards assigned it to the appellant. Prior to the expiration of the year allowed for redemption, the appellee deposited with the clerk for the use of Boyd, and in redemption of the land, the principal, interest and costs of the judgment and sale. The money deposited was, to quote from the complaint, " lawful money of the United States." After the payment to the clerk the appellant demanded and received a deed from the sheriff. The prayer is that the deed of the sheriff to appellant be set aside and appellee's title quieted.

We think the complaint very clearly shows that the appellant's act is such as entitles the appellee to his action. The fact that he refused to recognize the redemption of the appellee as a valid one, and demanded and received a deed, shows the assertion of a claim against appellee's property. It is not necessary that the complaint should show with any great particularity the nature of the claim of the defendant; for, as that is a matter peculiarly within the knowledge of the latter, the plaintiff is not required to state it specifically.

The deed executed to the appellant clouds appellee's title. It is a settled rule that clouds upon titles will be removed at the suit of the owner of the land. The complaint shows a claim under color of title, for it shows the demand and receipt of a deed, and from all such claims the true owner is entitled to have his property freed.

Where a complaint entitles the complainant to some relief, although not to all the relief prayed, it will repel an attack by demurrer. *Bayless* v. *Glenn,* 72 Ind. 5 ; *Teal* v. *Spangler,* 72 Ind. 381. The paragraph of the complaint under immediate mention does entitle the appellee to have the cloud cast by the delivery of the sheriff's deed to the appellant removed from his title. It entitles him to have his redemption declared sufficient.

Where facts are properly pleaded, courts will draw the proper inferences. The inference from the refusal of the appellant to recognize the redemption of appellee, and his de-

mand and receipt of a deed, over the objection of his adversary, is easily drawn. There can be no difficulty in concluding as a matter of law, that the appellant asserted a claim of title adverse to the appellee. The statement of the pleader's conclusion would not have strengthened the complaint. Where facts are stated which supply adequate grounds for a conclusion of law, the statement of a conclusion by the pleader adds no strength, and where they are not sufficient the statement of the conclusion does no good.

It is only where the pleading is founded upon a written instrument that it is necessary to set out the instrument. The complaint is not founded on the sheriff's deed, and it was therefore not necessary to make it an exhibit.

The third paragraph of the complaint differs from the first in one important particular. Instead of alleging, as the first does, that the redemption was made in lawful money, it is alleged that, " before the defendant was entitled to a deed for the property, to wit, on the 18th day of November, 1878, the plaintiff deposited in the office of the clerk of the Hancock Circuit Court, for the use and benefit of said Boyd, and in full redemption of said real estate, and in full of Deitch's bid and ten per centum per annum interest thereon from the date thereof to the date of payment into the hands of the clerk, the sum of $865.55, and he avers that the sum so paid into the hands of the clerk was in legal tender money of the United States and national bank notes, which was received by the clerk in full redemption of the real estate, and which sum was received by the clerk, and deposited by him in his own name in the Greenfield Banking Company's Bank, and the clerk at the time of payment entered full satisfaction of said judgment and said sale, and entered of record full redemption of said sale ; and plaintiff avers that the clerk ever since the said payment has been ready and willing, and now is ready and willing, and now brings into court the said sum of $865.55 in legal tender money of the United States for said Boyd."

A just construction of this pleading refers the readiness of

the clerk to pay the appellee in lawful money, the deposit of the bank notes received from appellee, and all other acts connected with the redemption to the 18th day of November. No other time is referred to, either directly or indirectly. The use of the word "said," as indeed does the entire context, shows that the time when lawful money was ready for the appellant was the 18th day of November, and this time is by a direct averment shown to have been within the year allowed for redemption. The effect of the allegation that the money was paid before the defendant was entitled to a deed, coupled as it is with specific allegations, is to identify and fix the time as to all the acts done in connection with the receipt and disposition of the bank and legal tender notes received by the clerk.

The precise question which we have for decision is this: Can the holder of a sheriff's certificate defeat a redemption in a case where the clerk receives in good faith bank notes, deposits them in bank, and has continuously, from the time of the receipt, lawful money ready for the holder of the certificate, which he is willing to deliver to him, and which he does tender him?

It was said in *Hamilton* v. *State*, 60 Ind. 193 (28 Am. R. 653), that the notes of the national banks are in no sense money of the United States, and this is unquestionably a correct statement of the law. In commercial affairs bank notes are money, but in a legal sense they are not. *Morris* v. *Edwards*, 1 Ohio, 189; *Paul* v. *Ball*, 31 Tex. 10; *Kennedy* v. *Briere*, 45 Tex. 305; *Morrill* v. *Brown*, 15 Pick. 173. Money, in legal acceptation, means gold and silver, or notes made a legal tender by a valid statutory enactment. National bank notes are not money, for they are not a legal tender. *Anderson* v. *Ewing*, 3 Litt. 245; *Corbit* v. *Bank of Smyrna*, 2 Har. Del. 235 (30 Am. Dec. 635); *Lange* v. *Kohne*, 1 McCord, 115; *Waterman* v. *Waterman*, 34 Mich. 490.

The act authorizing the redemption of land sold upon judgments requires that the holder of the sheriff's certificate shall receive lawful money; he can not be compelled to ac-

cept bank notes. A creditor may, if he elects, receive bank notes as money, but he can not be compelled to do so.

The clerk is not bound to receive in redemption anything but money. He is under no legal obligation to accept bank notes, or other circulating medium, treated by the business world as money, but may require gold or silver coin or notes made by law a legal tender.

The clerk in the present case did, however, receive bank notes as money, did treat them as such, did allow them to perform the functions of money, and does make them money to the holder of the sheriff's certificate. The appellant has suffered and can suffer no injury by the clerk's act in treating the notes as money, for they are made money to him by the clerk, and money they have been to him from the time the clerk received them in redemption. Now, as no possible injury can arise to the appellant, ought the substantial rights of the debtor to be sacrificed because he paid bank notes as money, to an officer expressly authorized and directed by law to receive money paid in redemption of property sold upon execution?

The case at bar is distinguishable from that of *Armsworth* v. *Scotten*, 29 Ind. 495, in at least two material respects. In that case the real question was whether the payment to the clerk of the amount of a judgment in bank notes operated as an extinguishment of the judgment, and it was held that the payment was not a discharge. Here we are not enquiring whether such a payment will extinguish a judgment, but whether an officer, having full authority to receive the money paid in redemption of lands sold on execution, may take upon himself the responsibility of receiving bank notes as the equivalent of money, and whether, when so received and made money to the execution creditor, the redemption shall be defeated. Nor was there in the case cited any pretence that the officer had treated the bank notes as money, or that he had offered to make them money to the person entitled to demand money. What we have said of *Armsworth* v. *Scotten*, applies

to *Prather* v. *State Bank*, 3 Ind. 356.    Both of these cases are founded upon *Griffin* v. *Thompson*, 2 How. 244, where the sole question was whether an execution debtor could compel the creditor to accept bank notes instead of money.    That case arose upon the motion of the debtor to compel the creditor to enter satisfaction of his judgment, and in support of this motion it was shown that bank notes had been paid to the officer.    The question presented for decision was whether the creditor could be compelled to accept the bank notes.    We quote from the opinion :    " With his claim thus solemnly ascertained of record, we are aware of no authority, from any source, which can compel him to commute it, or to receive in satisfaction thereof any other thing which he shall not voluntarily elect.    *    *    *    * To permit either the debtor or the officer to impose upon the creditor the receipt of depreciated paper in payment, would be to permit not merely a repeal of the judgment, but a violation, a virtual abrogation indeed, of the contract on which it was founded."    The wide difference between the cases cited and the one before us is, that in the former there was an attempt to make the creditor receive bank notes as money, whereas in the latter he is tendered money.

It has been often held that where bank notes are received as money, and accomplish the same purpose, they will be regarded as money in the strictest sense of the term.    The greatest commercial lawyer of England long since pointed out the difference between bank notes circulating as money, and private drafts or promissory notes.    In *Miller* v. *Race*, 1 Burr. 452, this great judge observed that they are not like bills of exchange, considered as mere securities or documents for debts. Judge STORY, speaking for the court, in *United States Bank* v. *Bank of Georgia*, 10 Wheat. 333, said : " Bank notes constitute a part of the common currency of the country, and, ordinarily, pass as money.    When they are received as payment, the receipt is always given for them as money.    They are a good tender as money, unless specially objected to."    In the quaintly reported case of *Austen* v. *Dodwell*, Equity Abridg. 318, this

distinction is recognized, and the reporter says: "And it was held by my lord chancellor, that this tender in a bank note was not, strictly speaking, a legal tender; but since it was proved the plaintiff offered to turn it into money, that made it a good tender." We do not cite these cases for the purpose of approving or disapproving the statement that a tender in bank notes is valid if not objected to, for that is foreign to our present enquiry; but for the purpose of showing the distinction between bank notes and drafts, or like instruments. We do rely upon them as showing that bank notes are often deemed money. Parsons says—and the cases cited fully sustain the statement: " It seems to be settled that a payment in good bank bills, not objected to at the time, is a good payment; and so is a tender of such bills; but the creditor may object and demand specie." 2 Parsons Cont. 621, 645. We are now prepared to understand the reason for the holding in *Corbit* v. *Bank of Smyrna*, 2 Har. 235, where it was held of bank bills: " If they have worked payment or satisfaction, actual or legal, they are in such case considered as money, and equivalent to so much coin." This result has been effected by the bank bills deposited with the clerk by the appellee. They have brought money to the appellant. They are and have been money to him since they went into the clerk's hands. Having accomplished this result, it seems to us that bare justice requires that the appellee should not lose his property because the officer designated by law received bank notes as money, without objection, and especially where, as here, money still they are, so far as concerns the creditor.

"A check is substantially the same as an inland bill of exchange," although there are some points of difference. 2 Daniel Neg. Inst. 528. Ordinarily, checks do not extinguish debts; if paid they have this effect, otherwise not. 2 Daniel Neg. Inst. 577; 2 Parsons Con. 622. We have already seen that bank notes accepted without objection constitute full payment, and we find it equally well settled that a check does not. If it can be justly held that a payment by check

to the clerk can be sustained, it surely must be held that payment in bank notes should be sustained; but payment by check has been upheld, and, therefore, it must be held that payment in bank notes should be enforced.    It was held in *Jessup* v. *Carey*, 61 Ind. 584, that a redemption was valid in a case where the clerk had accepted the check of the redemptioner.    Said the court, in the case cited: "If the appellant Walton had the money to his credit in bank, subject to his check, and the clerk of the court was willing to, and did, receive his check as so much money, the transaction was fully sanctioned by the ordinary usages of business, and was certainly not an illegal payment, if it culminated in the actual payment of the amount of the check, upon presentation thereof." It was also said: "It affirmatively appeared on the face of said complaint, that, within the time limited by law for the redemption of said real estate, the money called for by said check was placed to the credit of the clerk of the Hamilton Circuit Court, in the Citizens' Bank of Noblesville, the county seat of said Hamilton county."    In the case in hand the bank notes "culminated in money;" at the outset they were infinitely more like money than a check.    So, too, the bank notes went to the credit of the clerk in a bank of the county seat.    The points of resemblance are close, but the present case is much the plainer one, for the reason that the clerk took what, the commercial world over, is regarded as money; while in the one cited the officer took what is not looked upon as money anywhere.

There are many cases carrying the doctrine of payment in bank notes far beyond what we are required to do to sustain this judgment.  *Ex parte Board*, 4 Cowen, 420 ; *Hall* v. *Fisher*, 9 Barb. 17 ; *Ex parte Becker*, 4 Hill, 613 ; *Scott* v. *Commonwealth*, 5 J. J. Marshall, 643 ; *Governor* v. *Carter*, 3 Hawks, 328 (14 Am. Dec. 588).  There are strong cases sustaining the doctrine that payment by check is a valid redemption.  In *Webb* v. *Watson*, 18 Iowa, 537, it was said: "To a certain extent the clerk must be recognized as the agent of the purchaser.    His

powers are by no means so unlimited as to authorize him to receive anything else than money or its equivalent for the redemption. But when, without fraud on the part of the debtor, he receives such equivalent, and the debtor in good faith takes his acquittance, whatever may be his ultimate liability to the clerk, the creditor or purchaser cannot be heard to repudiate the act of the officer to the extent of defeating the redemption." The cases of *People* v. *Mayhew,* 26 Cal. 655, of *Nopson* v. *Horton,* 20 Minn. 268, and of *Carter* v. *Lewis,* 27 Mich. 241, declare and enforce a principle substantially the same as that decided in the case from which we have quoted.

The demurrers to the first and third paragraphs of the complaint were correctly overruled.

The second paragraph of the appellant's answer alleges that the appellee was adjudged a bankrupt; that an assignee was appointed and the property transferred to him; that since such adjudication and transfer appellee has never acquired any title to the real estate in controversy. The reply of the appellee admits the adjudication and the transfer to the assignee in bankruptcy, and alleges that such proceedings were had in the matter that no claims were proved against him; that prior to the expiration of the year for redemption the assignee filed his final report; that the assignee had not disposed of the mortgaged property, and was finally discharged from his trust; that appellee also received his discharge prior to the expiration of the time allowed by law for redeeming from the sheriff's sale.

We regard this reply as good. If, as is alleged, no claims were proved against the appellee, then there were no creditors to whom the property or its proceeds could go. The title taken by the assignee was only for the benefit of creditors. He acquired title for a specific purpose, and when that was accomplished his title ceased. It is true, that the adjudication in bankruptcy divested the bankrupt of title, but this divestiture was for a designated and fixed purpose, and with the accomplishment of that purpose the rights of the

assignee terminated. But there must have been ownership residing in some person when the trust ceased. Clearly enough that person is the original owner and creator of the trust. It is a familiar rule that where the purposes for which a trust was created are fully accomplished, the property remaining in the hands of the trustee revests, without a formal conveyance, in the creator of the trust. This principle was applied by the Supreme Court of Michigan to a case of property in the hands of the assignee after the discharge in bankruptcy. *Steevens* v. *Earles*, 25 Mich. 40. It was there said: "It is a principle of law, independent of statute, that the estate of a trustee who receives land for particular purposes, terminates when they are fulfilled. BAYLEY, J., in *Doe d. Player* v. *Nicholls*, 1 B. & C. 336, says: 'It may be laid down as a ·general rule, that where an estate is devised to trustees for particular purposes, the legal estate is vested in them as long as the execution of the trust requires it, and no longer, and, therefore, as soon as the trusts are satisfied it will vest in the person beneficially entitled to it. *Doe* v. *Simpson*, 5 East, 162, and *Doe* v. *Timins*, 1 Barn. & A. 530, are authorities upon that point.'" The rule that a bankrupt is entitled to property remaining in the hands of the assignee after the trust is finally settled, is maintained in the following cases: *Cromwell* v. *Comegys*, 7 Ala. 498 ; *In re Lathrop*, 3 Benedict, 490 ; *Colie* v. *Jamison*, 4 Hun, 284 ; *Dewey* v. *Moyer*, 9 Hun, 473. This last case is affirmed in *Dewey* v. *Moyer*, 72 N. Y. 70, although the point upon which we here cite it was not discussed. The reply shows that the purposes of the trust were fully accomplished, and the trust estate, with all matters connected with it, finally settled by the adjudication of a court of competent jurisdiction, and this brings the case fully within the rule.

The title of the assignee is, for the purposes of the trust, an absolute one. The divestiture of the bankrupt is complete, but upon the termination of the trust the law restores to him so much of the property as remains undisposed of, and he is remitted to his original rights. This restoration, however,

can not take place until the full execution of the trust, for until that period all title is in the assignee. This case falls clearly within the statement of the court in *Roberts* v. *Shroyer*, 68 Ind. 64, that "It may be possible that, in some rare instances, circumstances may occur during the progress of the settlement of the bankrupt's estate, which would render it equitable that the title should be revested in him; but this by no means proves that the title of the assignee is not absolute."

An assignee takes title for a specific purpose, and for that purpose takes an absolute title. His title is as complete as that of one administering a legal trust can possibly be. A title may for a specific purpose be an absolute one, and yet with the accomplishment of the purpose pass to another without a formal conveyance. No conditions limited the assignee's title; he had full, unlimited right to alienate for the purposes of his trust, but his title might terminate by the accomplishment of the purposes for which it was vested in him. No limitations or conditions, in the true sense of the term, are imposed upon his title, although such there are upon his powers and duties, but with the complete execution of the trust his title ceases. While he held it there was no condition; when the purpose for which he received it was fulfilled his title terminated.

The court permitted the appellee to prove by the banker with whom the clerk had deposited the money received from the appellee, that the bank was ready and willing to pay the clerk's check in gold or in legal tender notes. We think this testimony, even if incompetent, could not possibly have injured the appellant.

The appellant put in evidence the judgment of the United States District Court adjudging the appellee a bankrupt. Appellee introduced a transcript of the proceedings in that court, showing the appointment of the assignee, his report, its confirmation and his discharge, and showing also the final discharge of the bankrupt. The report of the assignee is not set

VOL. 82.—20

out, and we are not directly informed by the record what disposition was made of the real estate in controversy. The only intimation we can catch is that contained in that part of the register's report which reads thus: "And it appearing that said assignee has no assets belonging to the bankrupt estate, and his account for services having been examined and found correct, and there being no opposing interest, it is ordered that said account be allowed, and said assignee discharged. The assignee reports the gross assets that have come to him, none; gross indebtedness proven on which the bankrupt was liable as principal, none." It is also stated by the register that the bankrupt fully complied with the requirements of the law.

It appears, therefore, that the appellee had complied with the law; that the property here in controversy never came into the hands of the assignee as assets, and that both bankrupt and assignee were discharged and all matters finally adjudicated. The judgment of discharge is a conclusive adjudication, and can not be impeached in a collateral action. *Wiley* v. *Pavey*, 61 Ind. 457 (28 Am. R. 677); *Shawhan* v. *Wherritt*, 7 How. 627; *Reed* v. *Vaughan*, 15 Mo. 137. The judgment is conclusive, not simply as to the fact that the bankrupt was discharged, but it also conclusively establishes the fact that he was entitled to a discharge.

The judgment of the district court conclusively determines the fact that the assignee had performed his duties, was entitled to a discharge, and that the estate was finally settled. Involved in this adjudication is the subordinate matter that the property here in dispute was never assets in the hands of the assignee. There can be no doubt as to this, because the fact was so stated in the assignee's report, was so referred to in the register's certificate, and was thus brought before the court for consideration, and it was considered and determined by the judgment confirming the report and discharging the assignee. Whether the property never became assets because there were no creditors, or for some other cause, is

not for us to enquire. It is no part of our duty, nor is it within our power, to enquire upon what grounds the bankrupt court determined that the property never became assets in the hands of the assignee. Our power ends with the discovery of the judgment of the district court declaring this fact. We find it conclusively settled that the property which appellee sought to redeem was not assets in the hands of the assignee, and only one conclusion can be drawn, and that is, that the appellee's rights are restored to him.

It is said that the record shows that costs were unpaid, and that the bankruptcy matter was, therefore, not finally settled. The district court has, by its judgment, declared that the matter is finally settled, and that ends all reasonable debate.

Judgment affirmed.

Opinion filed at the November term, 1881.
Petition for a rehearing overruled at the May term, 1882.