OTIS *v.* PAYNE.

(*Jackson.* May 22d, 1888.)

1. STATUTE OF FRAUDS. *Letters as memorandum for sale of lands. Specific performance.*

O. inquired of P. by letter what he would take for a described tract of land on specified terms. P. replied by letter that he would take $2,500 for the land on the terms mentioned. O. promptly accepted the proposition by letter.

*Held:* That these letters constitute a sufficient memorandum of sale to enable the purchaser to maintain a bill for specific performance.

Code cited : § 2423, sub-sec. 4, (M. & V.); § 1758, sub-sec. 4, (T. & S.).

Cases cited and approved: Blair *v.* Snodgrass, 1 Sneed, 26; Sheid *v.* Stamps, 2 Sneed, 173 ; Howard *v.* Moore, 4 Sneed, 322 ; Lee *v.* Cherry, 85 Tenn., 707.

2. SAME. *Same. When contract of sale is complete and irrevocable.*

After O.'s letter of acceptance had been properly mailed and perhaps received, P. sold the land to another, and wrote O., informing him of that fact and withdrawing his former offer.

*Held:* The contract of sale was complete and irrevocable from date of the mailing of O.'s letter of acceptance.

Case cited and approved : 9 Howard (U. S.), 39.

3. INNOCENT PURCHASER. *Who is not. Notice. Pleading.*

The second purchaser from P. contracted for the land without notice of the former sale to O., but paid the price and took deed after full notice thereof. He did not interpose the plea of innocent purchaser.

*Held:* That for want of both pleading and proof, the defense of innocent purchaser is not available.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. H. T. ELLETT, Ch.

M. B. TREZEVANT for Complainant.

CRAFT & CRAFT, FRAZER & SCRUGGS, and F. T. EDMUNDSON for Respondent.

CALDWELL, J. This is a bill by the vendee against the vendor to compel the specific performance of an alleged contract for the sale and purchase of a small (five acres) tract of land.

Defendant denies that he ever made a contract, in writing or otherwise, to sell the land to complainant.

The Chancellor granted the relief sought in the bill, and from his decree the defendant has appealed.

The facts of the case are few and brief. Payne, the defendant, was a citizen of South Abington, Mass. He owned the land in question, and desired to sell it. It was situated near Memphis, Tenn. Otis, the complainant, lived at Memphis, and knew the land and its ownership. On the 18th of March, 1887, he wrote to Payne, stating that he desired to purchase the land, and asking Payne to give him the lowest price he would take for it, "payable one-third cash, one-third in one year, and one-third in two years, with interest at six per cent. per year."

Three days later, on the 21st of March, Payne acknowledged the receipt of this letter, and in reply wrote Otis that he would sell the land for $2,500 on the terms mentioned by Otis.

In due course of mail this reply was received by Otis, who promptly, on the 25th of the same month, wrote to Payne, accepting his proposition unconditionally and without modification. This letter of acceptance was mailed at Memphis the same day on which it was written. Four days thereafter, on the 29th of March, Payne wrote Otis as follows:

" Yours of 25th at hand. In reply, would say that I have sold the property to another person for cash."

This correspondence constitutes all that passed between these parties. Does it make such a contract as a court of equity will enforce by decree for specific performance? We think it does clearly.

Payne's first letter contains a clear and definite offer to sell a particular piece of property for a certain sum, and on specific terms.

The second letter of Otis was an immediate and unqualified acceptance of that offer. Thus the minds of the parties came together, and the contract was complete—the same' as if they had met face to face and used the same language.

Payne's letter was a continuing offer until received, and for a reasonable time thereafter. It was not binding on him until accepted, and before that he might have withdrawn it at any moment. But, when Otis accepted it and mailed his letter announcing the fact, he at once became entitled to all the benefits of his bargain.

The mailing of the acceptance, properly addressed and stamped, and not the reception of it by Payne, completed the contract; and after the acceptance was so mailed it was then too late for Payne to recede from his proposition, and sell the land to a different person. *Taylor* v. *The Merchants' Fire Insurance Company*, 9 Howard (U. S.), 39; 1 Parsons on Con., 483–4.

The first letter of Otis gave a description of the land, and its location. With this letter of Otis, the first letter of Payne connected itself by date and other reference. In legal contemplation the two are parts of the same instrument, and, being so regarded, they constitute a sufficient note or memorandum under the statute of frauds; and when the offer was accepted the contract became binding upon both parties, and capable of enforcement at the suit of either. Code (M & V.), § 2423, Sub-sec. 4; *Blair* v. *Snodgrass*, 1 Sneed, 26; *Sheid* v. *Stamps*, 2 Sneed, 173; *Lee* v. *Cherry*, 1 Pickle, 707.

Thus the complainant shows a contract in writing, signed by the party to be charged, certain in its terms, fair and just in its provisions, for a valuable consideration, and capable of being enforced without hardship upon his vendor.

Such a contract will always be enforced in a court of equity, though specific performance is an equitable remedy, depending for its enforcement entirely upon the sound judicial discretion of the

Court, and never being allowed as a matter of absolute right. 3 Pomeroy's Eq., Sec. 1404; *Howard* v. *Moore*, 4 Sneed, 322; 1 Sneed, 25.

What we term the other aspect of this case, and that which is yet to be stated, cannot change the result.

The *other person* to whom Payne referred in his second letter, and to whom he did in fact contract to sell the land as therein stated, was W. B. Gates, also of Memphis. There had been some correspondence between Payne and Gates about the same property sold to Otis. On the 28th of March, 1887, which was three days after Otis had mailed his letter accepting Payne's offer to him, and after Payne had received that letter, as we infer, Payne telegraphed Gates: "I received offer to-day—$2,500, partly on time. Will you pay that much cash down?" The next day Gates answered: "Your offer by telegram accepted. I will write particulars." And on the same day Payne wrote Otis, as has already been seen, that the sale had been made "to another person."

After this bill was filed by Otis against Payne, and after both Payne and Gates were advised of its pendency, and had conferred with each other about it, the contract between them was deliberately consummated by the execution and delivery of a deed of conveyance on the one side, and the payment of the purchase-money on the other side.

When that had been done, Gates, upon his own motion, was permitted to become a party defend-

ant to the bill of Otis. He filed an answer, in which he insisted upon the superiority of his purchase, and in that way sought to defeat this action. In support of his answer he established the facts of his purchase as herein just detailed, and also the further fact that he had no knowledge of the negotiations or trade with Otis until this bill was filed.

The Chancellor was of opinion that the rights of Otis were superior to those of Gates, and decreed accordingly.

Gates joined Payne in the appeal, and insists upon a reversal.

The decree is right. We have already seen that the contract of sale to Otis was completed on the 25th of March, when he mailed his letter accepting Payne's offer to him; and that this was *three days* before Payne made his offer to Gates on the 28th of March, and *four days* before Payne and Gates reached an agreement on the 29th of March.

That Gates had no notice of the sale to Otis when he made his contract can be of no avail to him when it is shown and admitted by him that he did have notice of that fact and of the pendency of this bill before he completed his purchase by the payment of the purchase-money. Not only is it shown that Gates knew of the contract of Otis and of the pendency of this bill when he paid the consideration and accepted the deed, but it is further established that Payne of-

fered to release him from his contract after the bill was filed.

In view of these facts, it is needless to 'say that Gates is not entitled to that consideration and protection usually given by the courts to an innocent purchaser. In fact he did not interpose the plea of innocent purchaser.

In the absence of such a defense and proof to sustain it, the contract of Otis is superior to that of Gates, and should prevail in this cause, being first in point of time.

Let the decree be affirmed. The cost below will be paid as adjudged by the Chancellor, and the costs of this Court will be paid by the appellants.