R. B. MARTIN, Appellant, v. E. G. DILLEY et al., Appellees.

**EXECUTION:** Sale—Redemption—Owner—Evidence.  Evidence re-
1  viewed, and held to clearly show that a redemptioner was the
owner of the property sold on execution, with consequent right to
redeem at any time before the expiration of 12 months from date
of sale.

**EXECUTION:** Sale—Redemption—Check in Lieu of Cash—Validity.
2  A valid redemption from execution sale may be made by the act
of the clerk in accepting in good faith and as cash the check of
the attorney representing the redemptioner, followed by the entry
of the fact of redemption on the record and the prompt honoring.
of the check.

**EQUITY:** Jurisdiction—Fraudulent Redemption from Execution Sale.
3  It is suggested that, if redemption from execution sale be attempted
by means of a worthless check, equity would afford available rem-
edies for the protection of the clerk accepting the check, and of
the holder of the certificate of sale.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

TUESDAY, OCTOBER 17, 1916.

THIS is an action of mandamus against the sheriff of
Woodbury County to compel the issuance of a sheriff's deed to
certain real estate, in pursuance of an execution sale thereof.
The trial court dismissed the petition, and the plaintiff ap-
peals.—*Affirmed.*

*Alfred Pizey* and *Vail E. Purdy,* for appellant.

*Faville & Whitney* and *Milchrist, Scott & Pitkin,* for
appellees.

EVANS, C. J.—On August 12, 1913, the plaintiff became
the purchaser of certain premises at sheriff's sale under spe-
cial execution.  On August 10, 1914, the intervener, Wells,
purported to redeem said premises from such execution sale.

Wells claimed to be the owner of the premises, having acquired the legal title thereto in October, 1913. The plaintiff challenges the validity of the redemption purported to have been made by Wells, on two grounds:

1. That Wells was not the owner of the property, but was a mortgagee only.

2. That, for the purpose of such redemption, he paid no money into the hands of the clerk, but delivered to him a check only.

It is urged that the clerk was not authorized to accept such check, and that, therefore, the purported redemption was not accomplished.

1. Returning to the first contention, it is made to appear that, at the time of the sheriff's sale, one Stevens was the execution defendant, and the owner of the property. He had,

1. EXECUTION: sale: redemption: owner: evidence.

however, conveyed the legal title to one Moore, as security for a debt of $1,280. A written contract was executed by Moore to Stevens, wherein it was agreed that, upon payment of the $1,280, the property should be conveyed back to Stevens. Stevens was also indebted to Wells for several thousand dollars. A verbal agreement was entered into between Stevens and Wells, whereby Wells, for a consideration of $2,000, to be applied as a credit upon the note held by him, agreed to buy, and Stevens agreed to sell the property to Wells, subject to the sheriff's sale and subject to the claim of Moore. Wells immediately redeemed from Moore by paying to him the amount of his debt, and Moore conveyed the premises to Wells, with the consent of Stevens, by good and sufficient deed. Later, Wells purported to make redemption from the sheriff's sale, as already indicated. These facts are undisputed. They furnish no room for debate as to the ownership of Wells and as to his right to redeem. We hold, therefore, that Wells was the owner of the property, and was entitled to redeem on August 10, 1914, when the attempted redemption was made.

2. The purported redemption on August 10, 1914, was made by Whitney, an attorney for the intervener. He announced, to the clerk of the district court his purpose to

2. EXECUTION: redemption: check in lieu of cash: validity.

redeem, and ascertained from such clerk the amount necessary for such redemption. He verbally offered to the clerk to give his check for the amount, or to produce the currency. The clerk advised him that he would accept his check, and the check was accordingly given for the full amount. The maker of the check was known to the clerk, and was deemed responsible. The check was deposited by the clerk in his bank of deposit, and the amount thereof was therein placed to his credit. The check passed through the usual course of collection, and was honored at all points. The check was drawn by Whitney against the Bank of Marathon, of which bank the intervener, Wells, was president. Whitney had arranged in advance for the credit upon which the check was drawn. Both Whitney and the clerk acted in good faith; likewise, Wells, for whom Whitney was acting.

The plaintiff's attack upon the legality of the redemption is based upon the proposition that the clerk had no authority to accept other than currency for the purpose of such redemption, and upon the further fact that the plaintiff called at the clerk's office on the 13th of August and presented his certificate and asked for the redemption money, and that he did not receive the same. It is the contention of the plaintiff at this point that the clerk asked him to come in on a later day. The clerk's version of this incident is that, when the plaintiff came in and asked for the redemption money, he said, ''Just wait a moment and I will talk with Mr. Wells.'' The plaintiff immediately walked out and refused to return, even though immediately notified that his money was ready for him. The plaintiff's argument is concentrated upon this incident, the claim being that the redemption money was not available to him until after the expiration of the year of redemption.

In *Webb v. Watson,* 18 Iowa 537, a redemption was made by a delivery to the clerk of a certificate of deposit. It was sustained in this court as sufficient. The plaintiff claims to distinguish the present case from that case by the circumstance already related. We think the distinction is without substance of merit. The clerk had accepted the check and he had received credit therefor. He had entered the redemption upon the record. The check was in fact good. The redemption, therefore, was good, under the authority of *Webb v. Watson.* If the redemption was good when made, it could not be defeated by the subsequent conduct of the clerk, if any, in satisfying himself that the check had been honored. The action of Whitney and the clerk was, on its face, a fair compliance with the provisions of the statute, and accomplished its ends in the manner in which financial transactions are usually had.

Nor is it necessary to say that such purported redemption would be necessarily conclusive under all circumstances. If dishonesty were brought to light, or if the check were dishonored, equitable remedies would be readily available for the full protection either of the clerk or of the certificate holder. Upon the record before us, no one suffered any prejudice by reason of the method of transaction. In *Wakefield v. Rotherham,* 67 Iowa 444, a purported redemption was sustained, though the amount paid in to the clerk was, by mistake, less than the amount due, the redeeming defendant being permitted to pay the omitted difference even after the expiration of 12 months. The precise question here presented was passed on in *Bowen v. Vangundy* (Ind.), 33 N. E. 687, and in *Hooker v. Burr,* 137 Cal. 663. In each case, it was held that a redemption by check in lieu of currency was legally sufficient. We think the case was properly decided by the lower court, and its judgment is therefore—*Affirmed.*

3. EQUITY: jurisdiction: fraudulent redemption from execution sale.

LADD, GAYNOR and SALINGER, JJ., concur.