## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* PERKINS.

[No. 5,822.　Filed March 19, 1907.　Rehearing denied June 5, 1907. Transfer denied January 31, 1908.]

1. INSURANCE.—*Election.—Waiver.—Burden of Proof.*—Where assured's right of action depends upon his election to accept, or the company's waiver of, a provision of his policy, the burden is upon such assured to show such election or waiver.　p. 185.

2. SAME.—*Withdrawal of Reserve.—Notice.—Waiver.—Question for Jury.*—Where assured failed to notify the company of his election to withdraw his accumulated reserve, but the company "lapsed" his policy and denied any liability thereunder, the question whether the company's acts in "lapsing" such policy and denying liability constituted a waiver of its right to demand assured's election, was properly submitted to the jury.　p. 185.

3. TRIAL.—*Instructions.—Insurance.—Policy.—Place of Execution.*—An instruction, in an action upon an insurance policy that if the assured made an application for a policy of insurance, and paid the premium upon the policy to be issued, whose terms had been agreed upon; that such application had been forwarded to New York for acceptance at the home office of the company, and that such application was accepted, and the policy issued and returned to its Kentucky agent for unconditional delivery to assured in Kentucky, the policy would be governed by the New York law, is correct.　p. 186.

4. CONTRACTS.—*Offer.—Acceptance.*—The acceptance, by word, writing, or conduct, of an explicit offer, creates a contract.　p. 186.

5. SAME.—*Offer.—Acceptance by Letter.—Lex Contractus.*—Where an explicit offer is made to a person in another state, and such offer is accepted unconditionally by a letter mailed in due course, the mailing of such letter closes the contract; and such contract is governed by the law of the state in which the letter is mailed. p. 187.

6. TRIAL.—*Question for Jury.—Insurance.—Notice of Forfeiture.*—Where assured testified that he received from the company no notice of the forfeiture of his policy, and two agents of the company produced separate copies of such notice, which were materially different, the question whether a notice of forfeiture was mailed to assured is for the jury.　p. 189.

7. INSURANCE.—*Forfeitures.*—*Notice.*—Where a statute provides that a forfeiture of an insurance policy can be enforced only after notice is sent to the assured, the giving of such notice is a condition precedent to the company's right to forfeit. p. 189.

8. SAME.—*Recovery of, by Bankrupt.*—Where a bankrupt, thinking, and being legally advised, that his insurance policy was wholly worthless, failed to include same in his schedule in bankruptcy, and no trustee in bankruptcy was ever appointed, such bankrupt being afterwards discharged, he has the legal right to maintain an action on such policy. Comstock, J., dissenting. p. 189.

From Superior Court of Vanderburgh County; *John H. Foster,* Judge.

Action by Charles G. Perkins against the Equitable Life Assurance Society of the United States. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*James T. Walker, C. A. DeBruler, John D. Welman* and *G. R. DeBruler,* for appellant.

*George K. Denton, Woodfin D. Robinson* and *William E. Stilwell,* for appellee.

ROBY, P. J.—Action by appellee to recover the alleged surrender value of a life insurance policy issued to him by appellant on March 21, 1882. There was a trial by jury, a verdict for appellee, with answers to interrogatories. Appellant's motions for judgment on the answers to interrogatories, notwithstanding the general verdict, and for a new trial, were each overruled, and judgment rendered on the verdict for $4,419.14.

The errors assigned and discussed are that the court erred in overruling each of said motions. The evidence shows, without conflict, that appellant, in 1882, issued the policy sued on, by which it insured appellee's life in the sum of $5,000, and further provided that at the end of fifteen years, if living, he should be entitled to any one of five options, one of which was to take the surrender value of the policy in cash. Appellee paid his annual premiums of $260.55 each,

regularly for twelve years, at the end of which time he became unable to make any further payments, and the policy, on May 14, 1894, was marked by appellant upon its books as "lapsed." The policy would have matured on March 18, 1897. On July 9, 1897, appellee wrote to appellant stating that he had paid premiums for twelve years, after which he was compelled to cease paying, and that he was of the opinion that he was entitled to a share of the reserve. Appellant answered, declining to recognize his claim, upon the stated ground that the policy had no surrender value until the end of the fifteen years, at which time it had lapsed for non-payment of premiums.

There is a provision in the contract by which it devolved upon appellee to give notice in writing of his election to withdraw his share of the accumulated reserve in cash, in the absence of which notice said sum would be applied to the purchase of an annuity. No notice of an election to withdraw said sum in cash was given, and it is argued that in the absence thereof no recovery can in any event be had. The burden was upon appellee to show an election or a waiver of the condition. *Wells* v. *Vermont Life Ins. Co.* (1902), 28 Ind. App. 620.

The court submitted to the jury the question of whether such condition had been waived. The appellant has no occasion to complain of such action. It denied liability upon the stated specific ground that the policy had been forfeited. It marked the same upon its books as "lapsed," and whether such acts were, as matter of law, sufficient to waive the objection that written notice of election had not been given need not be decided, inasmuch as they were indicative of an intention to waive such provision, and therefore supportive of the conclusion reached by the jury.

Appellee, who lived in Kentucky, made his written application for insurance on March 13, 1882. The policy was

3.  dated March 21, and the date fixed for the payment of premium and the completion and maturity of the policy was March 18. The application was made at Henderson, and delivered to an agent of appellant in the state of Kentucky. The application was forwarded to New York. The policy in suit was issued in New York and transmitted to appellee in Kentucky. There is evidence to the effect that it was mailed from New York to appellant's agents in Kentucky, and by them delivered to appellee. Appellee stated that he received the policy by mail at Henderson, either directly from the company at New York or from its agents at Louisville. There was evidence tending to show, and the general verdict of the jury finds the fact to be, that appellee paid the first premium on said policy at the time of making his application. Appellee asserts under these facts that the contract between the parties was consummated within the state of New York, and that the law of that state thereby became a part of said contract. Appellant, on the contrary, asserts that the contract was a Kentucky contract, and therefore governed by the laws of Kentucky. The court upon this subject instructed the jury as follows: "If you find that the plaintiff paid the first premium on the policy of insurance sued on at the time the application was made, and that the terms of the policy that was afterwards issued were then agreed upon, and that the application was accepted by the company at its head office, in the state of New York, and the policy issued and duly mailed there to the defendant's agent or agents in the state of Kentucky, for unconditional delivery to the plaintiff, and that it was so delivered, then the contract was complete when the policy was mailed in the state of New York, and is governed by the laws of that state."

4.  The legal proposition as thus stated is sustained by authority. The offer made by appellee in his application needed only to be accepted in order that a contract between the parties be created. When a pro-

posal, explicit in terms, is assented to by the party to whom it is made, the meeting of minds necessary to the formation of a contract takes place.   Of course a mere mental determination to accept is not sufficient, but the assent must be an expressed one.   Such expression may be by word of mouth, by writing, or by acts which show it.   *Fairbanks* v. *Meyers* (1884), 98 Ind. 92; *Street* v. *Chapman* (1867), 29 Ind. 142, 152.

When the parties are separated, the rule is that the law of the place where the last act necessary to full and complete formation of the contract is done is the law of the contract, and that, too, although knowledge of such acceptance does not immediately reach the proposer, and therefore the deposit in the post-office of a letter of acceptance, properly addressed and stamped, has often been held to close the contract.   *Tayloe* v. *Merchants Fire Ins. Co.* (1850), 9 How. (U. S.) 390, 13 L. Ed. 187; *Pittsburgh, etc., R. Co.* v. *Racer* (1894), 10 Ind. App. 503, 506; *Cromwell* v. *Yandes* (1878), 61 Ind. 495; *New Albany, etc., R. Co.* v. *McCormick* (1858), 10 Ind. 499, 501, 71 Am. Dec. 337; *Otis* v. *Payne* (1888), 86 Tenn. 663, 666, 8 S. W. 848; *Abbott* v. *Shepard* (1868), 48 N. H. 14; note to *Ford* v. *Buckeye State Ins. Co.* (1869), 99 Am. Dec. 663, 668.   There was a conflict of evidence as to the time and place where appellee paid his first premium.   The jury found that such premium was paid when the application was signed.   The policy, when issued, contained a stipulation that premiums thereon were payable at the office of the company in New York, and appellant agreed to pay the sum insured at said office.   The policy also contained a receipt acknowledging the payment of the first premium.   *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7, 12.

The circumstances connected with the transaction, in connection with the testimony of appellee, fully justified this finding.   This being true, the last and only act necessary to a completion of the contract was the acceptance by appellant

188    APPELLATE COURT OF INDIANA,

Equitable Life Assur. Soc., etc., *v.* Perkins—41 Ind. App. 183.

of the proposition contained in appellee's application. Had the policy issued been mailed at New York directly to appellee, the application of the foregoing elemental propositions would conclude the matter. Appellee stated that he received the policy by mail, either from appellant at New York or its agents at Louisville. There was evidence introduced, and not contradicted, to the effect that the policy was mailed at New York to said agents in Kentucky, and by them transmitted to appellee. Taking this fact as uncontroverted, the question for determination is whether the deposit of the policy in the mails, addressed to the agents to. be by them delivered to the assured, evidenced an acceptance of appellee's proposition. In *Kentucky Mut. Ins. Co.* v. *Jenks* (1854), 5 Ind. 96, the Supreme Court had before it the identical question, and after careful consideration of the cases and a review of the authorities, held that the contract was complete when the policy was issued and thus mailed. This case is conclusive. Its authority controls and its reason accords with the current of decision. *Kilborn* v. *Prudential Ins. Co.* (1906), 99 Minn. 176, 108 N. W: 861; *New York Life Ins. Co.* v. *Babcock* (1898), 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. 134; *Newark Mach. Co.* v. *Kenton Ins. Co.* (1893), 50 Ohio St. 549, 35 N. E. 1060, 22 L. R. A. 768; *Harrigan* v. *Home Life Ins. Co.* (1900), 128 Cal. 531, 547, 58 Pac. 180, 61 Pac. 99; *Hallock* v. *Commercial Ins. Co.* (1857), 26 N. J. L. 268; *Hacheny & Beno* v. *Leary* (1885), 12 Ore. 40, 7 Pac. 329; *Davis* v. *Aetna Mut Fire Ins. Co.* (1892), 67 N. H. 218, 34 Atl. 464; *McGarry* v. *Nicklin* (1895), 110 Ala. 559, 17 South. 726, 55 Am. St. 40; 1 May, Insurance (4th ed.), §60. Cases in which policies contain stipulations that they should not be binding until delivered to the assured in good health, etc., are not in point, there being no such stipulation in the policy issued to appellee. Cases in which the first premium was not paid at the time that the application was made are not in point upon the facts here presented, and the contract must be construed

as having been consummated in New York and therefore subject to the laws of that state.

The statutes of New York forbade the forfeiture of any policy of insurance, other than a term policy, issued by a life insurance company, because of nonpayment of any premium or part thereof, required by said policy to be paid, "unless a written or printed notice, stating the amount of said premium, interest, instalment or portion thereof due on such policy, the place where it should be paid and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured." The jury, in answer to an interrogatory, found that such notice was not given. There was evidence that it was not received. The record contains two copies of a notice which is claimed to have been mailed. Such copies were furnished, one by S. S. McCurdy, assistant registrar, and one by a clerk in the recorder's department of the appellant company. These copies are materially different. Such fact may have led the jury to discredit the testimony.

The appellee was unable to pay further instalments of premium, and the absence of such notice did not cause him to make default, but forfeitures are not favored, and, where the insurer is obligated to give notice of nonpayment of a premium, it cannot claim a forfeiture without showing that it has given, in the proper way and at the proper time, the notice required. *Goodwin* v. *Providence Sav., etc., Assn.* (1896), 97 Iowa 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. 411; Kerr, Insurance, §133. It follows that the conclusion reached by the trial court upon this branch of the case cannot now be interfered with.

The evidence shows, without contradiction, that in May, 1901, appellee filed his petition in bankruptcy in the district court, for the district of Indiana, together with schedules as required by the bankrupt act. He did not include among the list of his assets the policy sued upon. It was omitted for the sole reason that he was ad-

vised by his attorneys that it was without value. No trustee was appointed and the bankrupt was thereafter duly discharged. Appellant's contention seems to be that appellee's innocent failure to list the policy as an asset in the bankruptcy proceeding entitles it to retain the amount for which it is otherwise liable. The contention cannot be allowed. No trustee was ever appointed, and until the appointment of a trustee the legal title to his property remains in the bankrupt. *Rand* v. *Iowa Cent. R. Co.* (1906), 186 N. Y. 58, 78 N. E. 574; *Conner* v. *Long* (1881), 104 U. S. 228, 26 L. Ed. 723; *International Bank* v. *Sherman* (1879), 101 U. S. 403, 25 L. Ed. 866; *Fuller* v. *New York Fire Ins. Co.* (1903), 184 Mass. 12, 67 N. E. 879; *Leathem & Smith Lumber Co.* v. *Nalty* (1902), 109 La. 325, 336, 33 South. 354; Loveland, Bankruptcy (3d ed.), §149. Had a trustee been appointed, or should one hereafter be appointed, his title would relate to the date of the adjudication, but none having been appointed, it has not left appellee, and he is therefore the only person at the present time who could maintain the action. There are a number of other questions discussed, but they are not of controlling importance.

Judgment affirmed.

Myers, C. J., Watson, Hadley and Rabb, JJ., concur. Comstock, J., dissents.

## DISSENTING OPINION.

COMSTOCK, J.—Action by appellee against appellant to recover the alleged surrender value of a life insurance policy. There was a trial by jury and a verdict for appellee for $4,419.14. With the verdict the jury returned answers to interrogatories.

It is assigned that the court erred (1) in overruling the motion for judgment in favor of appellant on answers to interrogatories; (2) in overruling appellant's motion for a new trial. The amended complaint alleges that appellant, on March 13, 1882, issued to appellee a policy of

life insurance, agreeing to pay to appellee's wife, if living, and, if not, then to appellee, his executors, administrators or assigns, $5,000 within sixty days after satisfactory proof of appellee's death; that the policy was issued on the tontine dividend savings fund plan, and that the tontine dividend period expired March 18, 1897, and upon the completion of that period the holder of the policy might withdraw in cash the policy's entire share of the assets, which share appellant guaranteed should not be less than $2,784.95 in addition to the surplus apportionate; that the application upon which the policy was issued provided that the surrender value should be payable to appellee. It alleges that Annie T. Perkins, the beneficiary of the policy, died on the ...... day of ......, 1898, leaving the appellee surviving her.

The sixth paragraph of answer alleges that the appellee at no time paid the annual premium on the policy issued, which became due on March 18, 1894, 1895 and 1896, or any of said debts; that on July 14, 1897, appellant notified the appellee that because of the failure to pay such premiums the policy had become forfeited and void; that the appellee thereupon abandoned any claim to said policy, and agreed that the same had become forfeited and void; that he did, on May 13, 1901, file in the district court of the United States his petition in bankruptcy, and was duly adjudicated a bankrupt; that with the schedules filed in his petition in bankruptcy, which were verified by him, he stated that he had no policy of insurance and no unliquidated claims of any nature; that he did not set out among his assets in any place in such schedule the policy in suit, nor any interest therein, but claimed that his only property was clothing and ornaments of the person amounting to $75, which were set off to him as exempt under the laws permitting exemptions to householders.

Appellee filed a reply to the answer, the first paragraph of which was a general denial to the second, third and fourth paragraphs of answer. The second was a reply to the fourth

paragraph of answer, and sets out a statute of the state of New York, which provides that the repeal of a statute shall not affect or impair any act done or accruing or forfeiture incurred prior to the time such repeal takes effect, but the same may be enforced and prosecuted as fully, and to the same extent, as if the repeal had not been effected, and that all actions and proceedings done prior to the taking effect of such repeal may be prosecuted and defended to final effect in the same manner as they might if such provisions were not repealed, and that such statute is now the law of New York. Appellee also filed an .amended fifth paragraph of reply, in which he admits that he filed the petition in bankruptcy asking that he be adjudged a bankrupt, and that on May 14, 1901, he was adjudged a bankrupt, but says that his estate was duly administered and settled, and that on November — he was duly discharged in bankruptcy. He files with this paragraph of answer a copy of his certificate of discharge. He further alleges that only one claim is filed against him in bankruptcy, and that claim has been fully paid. Appellee also filed a reply in two paragraphs to the sixth paragraph of answer, the first of which was a general denial. In the second paragraph he alleges that on July 14, 1897, he did receive notice that the policy sued on was forfeited for failure to pay the premium due on March 17, 1894, which notice was in answer to the communication from him asking his share in the surplus or surrender value of the policy; that he believed the statement of the appellant that the policy was forfeited, and for that reason he in good faith omitted the policy from his schedules in bankruptcy, and stated therein that he had no policies of insurance; that he was afterwards adjudicated a bankrupt and 'discharged with only one claim amounting to $54.21 filed against his estate, and this claim has been fully paid; that in October, 1902, he obtained information which led him to believe that his policy of insurance had not been forfeited, by reason of the failure of the appellant to give notice of the accrual of

the premium provided by the New York statute; that he at once communicated with his counsel, who informed him that his policy was not forfeited because of the failure of the company to give the notice required by the New York statute. He denied that he ever agreed that the policy was forfeited, and thereupon brought suit.

The evidence shows that appellee failed to pay the annual premium which fell due March 18, 1894, and each succeeding premium which fell due thereafter. On July 14, 1897, appellant notified appellee that because of the failure to pay such premium the policy had become forfeited and void. On May 13, 1901, appellee filed in the proper district court of the United States his petition in bankruptcy, and was duly adjudicated a bankrupt. In the schedules filed with his petition, and which were verified by him, he stated that he had no policies of insurance and no unliquidated claims of any nature. He did not set out among his assets in such schedules the policy in suit, nor any interest therein, but stated that his only property was clothing and ornaments of the person, amounting to $75, which were set off to him as exempt under the laws permitting exemptions to householders. Upon this set of facts appellant claims that appellee cannot maintain this action. Section seventy of the bankruptcy act of 1898 (30 Stat., p. 565, U. S. Comp. Stat. [1901], p. 3451) provides that the estate and title of a bankrupt shall pass by operation of law, to his trustee as of the date he was adjudged a bankrupt, except such property as is exempt. This was the rule in 1841, under the law of 1867, and is under the present law. It appears from the record that no assets, liable for the payment of his debts, were shown by the bankrupt; that his indebtedness amounted to $30,000, but, in the absence of assets, no trustee was appointed, and only one claim of $54.21 filed against the estate. The bankruptcy act vests title of the assets of the bankrupt in the trustee without any assignment in fact. *Atwood* v. *Bailey* (1903), 184 Mass. 133, 68 N. E. 13.

In the case of *First Nat. Bank* v. *Lasater* (1905), 196 U. S. 115, 49 L. Ed. 408, 25 Sup. Ct. 206, the court held that a bankrupt, after his estate had been finally closed up, could not assert title to assets which he had omitted from his schedule. In the course of the opinion the court, by Brewer, J., said: "We have held that the trustees in bankruptcy are not bound to accept property of an onerous or unprofitable character, and that they have a reasonable time in which to elect whether they will accept or not. If they decline to take the property the bankrupt can assert title thereto. *American File Co.* v. *Garrett* [1884], 110 U. S. 288, 295, 28 L. Ed. 149, 152, 4 Sup. Ct. 90; *Sparhawk* v. *Yerkes* [1891], 142 U. S. 1, 35 L. Ed. 915, 12 Sup. Ct. 104; *Sessions* v. *Romadka* [1892], 145 U. S. 29, 36 L. Ed. 609, 12 Sup. Ct. 799; *Dushane* v. *Beall* [1896], 161 U. S. 513, 40 L. Ed. 791, 16 Sup. Ct. 637. But that doctrine can have no application when the trustee is ignorant of the existence of the property and has had no opportunity to make an election. It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property, on the ground that the trustee had never taken any action in respect to it. If the claim was of any value (as certainly was this claim, according to the judgment below) it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property." To the same effect are *Scruby* v. *Norman* (1902), 91 Mo. App. 517; *Kenyon* v. *Wrisley* (1888), 147 Mass. 476, 18 N. E. 227, 1 L. R. A. 348; *In re Holden* (1902), 113 Fed. 141, 51 C. C. A. 97.

A wilful omission to state a debt in his schedule is good ground for refusing a discharge. Section 29 of the bankruptcy act (30 Stat., p. 554, U. S. Comp. Stat. [1901], p. 3433), prescribes punishment by imprisonment of a bankrupt for knowingly and fraudulently concealing, while a

bankrupt or after his discharge, any property belonging to his estate. These provisions emphasize the importance of the surrender by the bankrupt to the trustee of all the assets of the bankrupt. If the conduct of the bankrupt, whether from want of knowledge of the law or of the facts, or from a fraudulent purpose, results in a wrong to his creditors, the law will not permit him to reap any benefit from such conduct. No trustee was appointed, for the reasons before stated, but if the title remained in the bankrupt it did so as trustee for the benefit of his creditors. He cannot be heard to say that the trustee did not take possession of the policy or that no trustee was appointed. Under the facts shown, the good or bad faith of the bankrupt is not material because the result of his conduct is in any event to wrong his creditors. Courts will not permit one, who from any cause knowingly does an act which necessarily defrauds his creditors, to profit thereby to the detriment of his creditors. Appellee's sworn statement that he had no policy of insurance was a concealment—an affirmative act operating as a fraud upon his creditors. But appellee argues that this action may be maintained, notwithstanding the proceedings in bankruptcy. The argument is made upon three propositions: First, all claims not filed against the estate of the bankrupt within one year of the date of the adjudication are barred; citing section fifty-seven of the bankruptcy act of 1898 (30 Stat., p. 560, U. S. Comp. Stat. [1901], p. 3444); *Bray* v. *Cobb* (1900), 100 Fed. 270; *In re Shaffer* (1900), 104 Fed. 982; *In re Rhodes* (1900), 105 Fed. 231; *In re Liebowitz* (1901), 108 Fed. 617; *In re Moebius* (1902), 116 Fed. 47; *Hutchinson* v. *Otis* (1903), 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179. Said section fifty-seven, *supra,* has been held, in the cases cited, to prohibit the filing of proof of a claim subsequent to one year after the adjudication. The question of concealment, fraudulent or otherwise, by the bankrupt did not arise. The general purpose of the act is to settle estates in bankruptcy within a reasonable time. The

196 APPELLATE COURT OF INDIANA,

Equitable Life Assur. Soc., etc., *v.* Perkins—41 Ind. App. 183.

particular purpose is to subject all the bankrupt's property, except that which is exempt, to the discharge of his indebtedness.

The second proposition is, that, when all claims that have been approved within the year are paid, the surplus of the estate goes to the bankrupt. 30 Stat., p. 564, §66, U. S. Comp. Stat. (1901), p. 3448; Loveland, Bankruptcy (3d ed.), §270; *Boyd* v. *Olvey* (1882), 82 Ind. 294, 303. Section sixty-six, *supra*, provides that debts which remain unpaid after the final dividend has been declared shall be paid by the trustee into court. Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt. Loveland, Bankruptcy (3d ed.), §270. *Boyd* v. *Olvey, supra,* decides that the judgment of the district court conclusively determines the fact that the assignee had performed his duties, was entitled to a discharge, and that the estate was finally settled. We quote as follows from said case: ''Involved in this adjudication is a subordinate matter that the property here in dispute was never assets in the hands of the assignee. There can be no doubt as to this, because the fact was so stated in the assignee's report, was so referred to in the register's certificate, and was thus brought before the court for consideration, and it was considered and determined by the judgment confirming the report and discharging the assignee.'' The case wholly differs from the one at bar, and the section of the statutes is not pertinent to the question before us.

The third proposition is that, where no trustee has been appointed, the title remains in the bankrupt, and if no trustee is ever appointed the bankrupt is never divested of title. *Fuller* v. *New York Fire Ins. Co.* (1903), 184 Mass. 12, 67 N. E. 879; Loveland, Bankruptcy (3d ed.), §149; 5 Cyc. Law and Proc., 343. Section forty-four of the bankruptcy

act provides that the creditors, at their first meeting after the adjudication, shall appoint a trustee. If the creditors do not act, the courts will do so. It has been held that where only a single creditor appears at the first meeting and proves his debt, the right to choose a trustee belongs to him. The trustee could acquire no title in exempt property, and, as there were no other assets upon the facts as represented by the bankrupt, such appointment would have been idle. It cannot be maintained that inasmuch as the verified statement made by the bankrupt rendered it unnecessary to appoint and prevented the appointment of a trustee, that he, the bankrupt, was never divested of title. The fact that the appellee, by a clear violation of the statute, prevented the appointment of a trustee, will not give him the right to that which a compliance upon his part with the law would have vested in the trustee. By the proceedings in bankruptcy all title in the policy passed from the bankrupt. This would include a possibilty coupled with an interest. *Williams* v. *Heard* (1891), 140 U. S. 529, 11 Sup. Ct. 885, 35 L. Ed. 550.

It follows that appellee had no right of action, and the judgment should be reversed.