George SUYEMASA, Plaintiff-Appellant,

v.

Roger D. MYERS, Defendant-Appellee.

Margaret E. Carter VAN LUE, Shawn R. Carter Allen, Plaintiffs-Appellants,

v.

Roger D. MYERS, Defendant-Appellee.

Clinton W. NAUGLE, Plaintiff-Appellant,

v.

Roger D. MYERS, Defendant-Appellee.

No. 1–180 A 9.

Court of Appeals of Indiana,
First District.

May 28, 1981.

Trent Thompson, Allen & Thompson, Salem, for plaintiffs-appellants.

John W. Mead, Mead, Mead & Mead, Salem, Roland M. Lowell, Buck, Baker & Baker, Nashville, Tenn., for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

George Suyemasa (Suyemasa), Margaret Carter Van Lue (Van Lue), Shawn Carter Allen (Allen), and Clinton Naugle (Naugle) appeal the trial court's judgment which granted Roger Myers' (Myers) motion to dismiss in each action.[1] We reverse and remand.

## STATEMENT OF THE FACTS

In March of 1969 Elizabeth Trinkle, Bernice Harris, Jane Suyemasa, and Van Lue

---

1. The cases below, *Suyemasa v. Myers, Van Lue & Allen v. Myers,* and *Naugle v. Myers* have been consolidated for purposes of appeal.

visited Nashville, Tennessee. While they were in Nashville, they visited with Myers and his family. On that day some discussion took place about shares of stock in Pat Boone's Favorite Foods of America Enterprise, Incorporated (Boone's Favorite Foods) which was a Tennessee corporation. Myers had recently agreed to purchase some of the stock and was very excited about it.

In April of 1969 Myers was in Indiana visiting his family. While he was in Salem, he talked to his uncle, Pete Jackson, about Boone's Favorite Foods stock. Myers then accompanied Pete Jackson to Naugle's house in Salem. Naugle testified that Myers explained to him the stock market and the stock of Boone's Favorite Foods and inquired whether Naugle wanted to purchase any of the stock at ten dollars ($10.00) per share. Naugle replied that he would think about buying the stock. Soon after the meeting, Naugle received a letter from Myers encouraging him to buy the stock. On April 12, 1969, Naugle wrote to Myers that he would buy three hundred (300) shares of Boone's Favorite Foods stock for three thousand dollars ($3,000.00). Myers cashed the check and sent to Naugle a written promise to transfer three hundred (300) shares of Boone's Favorite Foods stock. Approximately three weeks later, Myers returned to Naugle's home to sell him ten thousand dollars ($10,000.00) more stock in Boone's Favorite Foods; however, Naugle was not interested in any more stock since he had not received the three hundred (300) shares of stock for which he had already paid. Myers then requested some names of individuals who would be interested in buying the stock. Naugle stated that he did not know of anyone who would be interested. Since he never received the stock of Boone's Favorite Foods, Naugle filed this action on March 4, 1977, against Myers for breach of contract.

In May 1969 Myers was once again in Salem, Indiana, to visit his family. On that day Myers visited Suyemasa and informed him that he (Myers) could obtain some founder's stock in Boone's Favorite Foods. Myers quoted a price of ten dollars ($10.00) per share to Suyemasa and asked how many shares Suyemasa wanted to buy. Suyemasa replied that he would purchase about four hundred (400) shares; however, Suyemasa did not pay Myers for the stock at that time. Approximately one week later, Suyemasa sent a letter to Myers thanking him for the information about Pat Boone's enterprise and requesting two thousand four hundred (2400) shares of stock at a price of ten dollars ($10.00) per share. Myers cashed the check and sent to Suyemasa a written promise to transfer two thousand four hundred (2400) shares of stock in Boone's Favorite Foods. Suyemasa never received the shares of stock and brought this action on January 27, 1977, against Myers for breach of contract.

On the same day when Myers visited Suyemasa, he also talked to Van Lue and Allen at Van Lue's home in Salem about the stock of Boone's Favorite Foods. Van Lue contends she reached an agreement with Myers on that day that she would buy two hundred (200) shares of Boone's Favorite Foods at ten dollars ($10.00) per share. She testified that she gave Myers a check for two thousand dollars ($2,000.00) on that day and later sent another check for two thousand dollars ($2,000.00). Myers, however, contends that Van Lue sent him two checks for two thousand dollars ($2,000.00) at the same time. Myers sent to Van Lue and Allen written promises to transfer two hundred (200) shares of stock to each. Since Van Lue and Allen did not receive the stock, they filed this action against Myers on January 27, 1977, for breach of contract.

Myers filed a motion to dismiss in each action alleging the Washington County Circuit Court lacked subject matter jurisdiction and personal jurisdiction over him; that there was lack of sufficiency of process and service of process; that the cause of action was barred by the statute of limitations; and that the plaintiffs had failed to join an indispensable party. Affidavits in support of the motions to dismiss were filed by Myers. The trial court held a hearing on the motions and heard testimony from the appellants. The trial court sustained

Myers' motion and entered the following judgment:[2]

"The Court heretofore heard testimony and took evidence on Defendant's Motion to Dismiss, and took the same under advisement. The Court having considered said matters and now being duly advised in the premises, does now make the following findings of fact, conclusions of law and orders:

## FINDINGS OF FACT

1. That the Plaintiff is a resident of the State of Indiana.

2. That the Defendant is a resident of the State of Tennessee.

3. That on or about the 5th day of May, 1969, the Plaintiff and the Defendant entered into a contract for the sale of certain shares of stock in Favorite Foods of America Enterprises, Inc.

4. That this suit was filed on the 27th day of January, 1977, more than seven years after the execution of the contract.

5. That the contacts leading to the execution of the contract were initiated by the Plaintiff in the State of Tennessee.

6. That the final act resulting in the contract was the receipt by the Defendant of the consideration for such contract and the execution of it by the Defendant, all in the State of Tennessee.

7. That the terms of such contract are partly in writing and partly oral, the consideration for such contract being oral.

8. That by Plaintiff's testimony performance under the contract should have been completed within three months of the date of execution.

9. That the Defendant was not doing business in the State of Indiana.

10. That the Defendant has done no act in the State of Indiana which would subject him to jurisdiction under T.R. 4.4.

## CONCLUSIONS OF LAW

1. That the law is with the Defendant and against the Plaintiff.

2. That the Court lacks jurisdiction of the Defendant.

3. That the contract is an oral contract.

4. That this contract is governed by the laws of the State of Tennessee.

5. That the Court lacks subject matter jurisdiction.

6. That this cause of action is barred by the statute of limitations.

## ORDER

1. That Plaintiff's Motion to Strike is now denied.

2. That the Defendant's Motion to Dismiss is now granted.

3. That the Defendant shall recover his costs herein expended in the sum of $ None ."

## ISSUES

1. Whether the trial court erred in finding that it lacked subject matter jurisdiction.

2. Whether the trial court erred in finding that it lacked personal jurisdiction over Myers.

3. Whether the trial court erred in finding these actions to be barred by the statute of limitations.

## DECISION

*Issue One*

■ The appellants allege the trial court erred in deciding it lacked subject matter jurisdiction. They state the causes of action sound in contract, and therefore, the trial court has jurisdiction since it is a court of general jurisdiction. Myers contends this issue has been waived and the judgment should be affirmed since the appellants failed to cite any authority in support of their position on this issue. While this

2. This judgment was entered in the actions filed by Suyemasa and Van Lue and Allen. The same judgment, with the exception of the date in Finding of Fact No. 3, was entered in Naugle's action against Myers.

court has affirmed the trial court's judgment when the appellant has failed to cite authority in support of his or her argument, *see Kerkhof v. Dependable Delivery, Inc.*, (1975) 167 Ind.App. 248, 338 N.E.2d 513, we prefer to decide cases on their merits when possible. *Mathews v. Mathews*, (1972) 151 Ind.App. 70, 278 N.E.2d 325. Since we can comprehend the proposition advanced by appellants under this issue and their argument is well-taken, we will discuss the merits of this issue.

Myers contends the Washington Circuit Court did not have subject matter jurisdiction. He states the trial court would have subject matter jurisdiction of these cases if the last act necessary to full and complete formation of the contract was done in Indiana and cites us to *Equitable Life Assurance Society of the United States v. Perkins*, (1907) 41 Ind.App. 183, 80 N.E. 682, *trans. denied* (1908) and *W. H. Barber Co. v. Hughes*, (1945) 223 Ind. 570, 63 N.E.2d 417. The citation of those cases for the proposition which Myers advances is erroneous. *Equitable Life* and *Barber* did not involve the subject matter jurisdiction of the trial courts. The issue before the appellate court in each case concerned the choice of substantive law to be applied by the trial court as reflected by the statement of this court in *Equitable Life Assurance Society of the United States v. Perkins, supra*, at 187, 80 N.E. 682, that "[w]hen the parties are separated, the rule is that the law of the place where the last act necessary to full and complete formation of the contract is done is the *law of the contract* ..." (emphasis added). In contrast, "[t]he question of subject matter jurisdiction concerns whether the court does or does not have jurisdiction of the general subject or the general class of cases to which the particular action belongs." *Brendanwood Neighborhood Association, Inc. v. Common Council of City of Lebanon*, (1975) 167 Ind.App. 253, 255, 338 N.E.2d 695, 696, *trans. denied* (1976). This legal power to entertain any matter or act therein must be derived from the constitution or from some statute. *Farley v. Farley*, (1973) 157 Ind.App. 385, 300 N.E.2d 375, *trans. denied* (1974). Therefore, as Justice Hunter stated in *State ex rel. Young v. Noble Circuit Court*, (1975) 263 Ind. 353, 356–57, 332 N.E.2d 99, 101:

"The only relevant inquiry in determining whether any court has subject matter jurisdiction is to ask whether the kind of claim which the plaintiff advances falls within the general scope of the authority conferred upon such court by the constitution or by statute. *Brown v. State*, (1941) 219 Ind. 251, 37 N.E.2d 73. This determination uniformly entails an examination of the jurisdictional grant and does not, in the ordinary case, turn upon technical intricacies of pleading." (Footnote omitted.)

The subject matter of the appellants' complaints was breach of contract, and indeed, the trial court found an oral contract to exist in its Conclusion of Law No. 3. Clearly the Washington Circuit Court has subject matter jurisdiction of contract cases. *See*, Ind.Const. art. 7, § 8; Ind.Code 33–4–4–2. Therefore, the trial court erroneously sustained Myers' Ind.Rules of Procedure, Trial Rule 12(B)(1) motion in each case.

*Issue Two*

The appellants contend the trial court's ruling that it lacked personal jurisdiction over Myers is erroneous. Specifically they allege Myers waived his right to challenge the trial court's personal jurisdiction when his attorneys entered an appearance for him and asked for an extension of time to file an affirmative defense or contest the court's jurisdiction. Also, the appellants state, the trial court had jurisdiction over Myers under Ind.Rules of Procedure, Trial Rule 4.4(A)(1). Myers alleges the appellants have waived their argument that he could not challenge the trial court's jurisdiction because they did not include this argument in their motions to correct errors. Myers also alleges that he was not doing business in Indiana, and so the trial court had no basis for jurisdiction over him over T.R. 4.4(A). Because we find the trial court did have personal jurisdiction over Myers under T.R. 4.4(A)(1), we will discuss only that issue.

■ A defendant may challenge the jurisdiction of the trial court over him either by affirmative defense as enumerated in Ind.Rules of Procedure, Trial Rule 8(C) or by motion to dismiss pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(2). When a defendant attacks the jurisdiction over his person, he bears the burden of proof upon that issue unless the lack of jurisdiction is apparent upon the face of the complaint. *Weenig v. Wood*, (1976) 169 Ind.App. 413, 349 N.E.2d 235, *trans. denied*. Since matters of jurisdiction are often not apparent on the face of the complaint, a challenge to a trial court's jurisdiction over a defendant may require the taking of extensive evidence through affidavits, depositions, interrogatories, and oral testimony. *See, Data Disc, Inc. v. Systems Technology Associates, Inc.* (9th Cir. 1977) 557 F.2d 1280; *O'Hare International Bank v. Hampton*, (7th Cir. 1971) 437 F.2d 1173; *Bowman v. Curt G. Joa, Inc.*, (4th Cir. 1966) 361 F.2d 706; *Jurko v. Jobs Europe Agency*, (1975) 43 Ohio App.2d 79, 334 N.E.2d 478; *Cf., Cooper v. County Board of Review of Grant Co.*, (1971) 150 Ind.App. 232, 276 N.E.2d 533. The trial court must then determine what acts the defendant did and whether such acts are sufficient to render him amenable to service of process under the "long-arm" statute.

In Indiana, a nonresident submits to the jurisdiction of Indiana courts if the provisions of T.R. 4.4(A) are met. T.R. 4.4(A) states:

"(A) Acts serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state; or

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state."

Myers states that the only possible basis for extending jurisdiction over him under T.R. 4.4(A) is whether he did "any business in this state." He contends he was not doing business in this state because he had no office in Indiana, and he was not in the business of transferring stock or stock subscriptions. Although these facts might well have been required under the old "doing business" cases which preceded our long-arm statute, we feel they are no longer the controlling criteria for the determination of whether a defendant did any business in Indiana. We agree with Chief Judge Steckler's statement in *Oddi v. Mariner-Denver, Inc.*, (S.D.Ind.1978) 461 F.Supp. 306, 308 that:

"Obviously, this is a standard which has less than mathematical precision. It should be noted that the Indiana long-arm statute was intended to extend personal jurisdiction of courts sitting in this state, including federal courts, to the limits permitted under the due process clause of the fourteenth amendment. *Valdez v. Ford, Bacon and Davis, Texas, Inc.*, 62 F.R.D. 7, 14 (N.D.Ind.1974). Thus, the

usual two-step analysis of first checking if a state statute allows jurisdiction over defendant and then ascertaining whether the state's assertion of jurisdiction accords with due process collapses into a single search for the outer limits of what due process permits. *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978)." *See,* Civil Code Study Commission Comments, 1 W. Harvey, Indiana Practice at 308 (1969). Therefore, we must examine the facts in this case along with the requirements of due process to determine whether the outer limits of due process accord with the assertion of jurisdiction over Myers.

■ Due process requires that in order to subject a nonresident defendant to the jurisdiction of the forum's court, the defendant must have certain minimum contacts with the forum such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. "Once the requisite 'minimal contacts' are established, due process requires a method of notice reasonably calculated to afford the defendant actual notice and thus an opportunity to be heard." *Milosavljevic v. Brooks*, (N.D.Ind.1972) 55 F.R.D. 543, 548.

In the present case, some of the appellants visited Myers in his home in Tennessee. It was during this visit that the subject of the stock was first discussed. One or two months later, Myers talked with each of the appellants in their homes in Indiana. He contends these discussions were at the request of the appellants. However, he does not dispute that during these discussions the subject of the sale of stock was discussed, and an offer was made. Neither does Myers dispute the fact that he entered into contracts for the sale of stock. These contracts, he contends, are partly oral and partly written: the oral part of the contracts was entered into during his discussions with the appellants in Indiana, while the written part was the written promise to transfer stock which he sent to the appellants. Myers alleges that these contacts, *i. e.,* the discussion of the sale of

stock and the partial making of contracts which are the subject of these suits, are not sufficient minimum contacts. We disagree.

■ It is clear that a state can subject a nonresident to suit in its courts on the basis of an isolated insurance contract which has substantial connection with the state. *McGee v. International Life Insurance Co.*, (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. However, this does not mean that all restrictions on a state court's exercise of personal jurisdiction over a nonresident defendant have come to an end. As the United States Supreme Court stated in *Hanson v. Denckla*, (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Citation omitted.)

Neither is the quantity of the contacts the controlling criterion. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. Washington, supra,* 326 U.S. at 319, 66 S.Ct. at 160. Activities which have been found to be sufficient include substantial negotiations in the forum state, *see, Thompson v. Ecological Science Corp.,* (8th Cir. 1970) 421 F.2d 467; *Liquid Carriers Corp. v. American Marine Corp.,* (2nd Cir. 1967) 375 F.2d 951; *Tatham-Laird & Kudner, Inc. v. Johnny's American Inn, Inc.,* (N.D.Ill.1974) 383 F.Supp. 28, or purposeful activities in the state both preliminary and subsequent to the execution of the contract, *see, American Contract Designers, Inc. v. Cliffside, Inc.,* (S.D.N.Y.1978) 458 F.Supp. 735; *National Gas Appliance v. A. B. Elec-*

*trolux*, (7th Cir. 1959) 270 F.2d 472, *cert. denied*, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960); *Unidex Systems Corp. v. Butz Engineering Corp.*, (D.D.C.1976) 406 F.Supp. 899.

The assertion of jurisdiction over Myers does not offend due process. It is not predicated on the unilateral activity of the appellants, but on the purposeful conduct of Myers. While physically present in Indiana, he discussed the sale of the stock with the appellants, negotiated the terms of the contract, and offered to sell the stock to the appellants. Myers, by these acts done in Indiana, purposefully availed himself of the privilege of conducting business activities within this state.

Myers contends the appellants have not been damaged by anything done in Indiana since the contract was executed in Tennessee by his action of mailing his written promise to transfer the shares of stock. We disagree. The mere execution of the contracts outside Indiana should not preclude jurisdiction, *see, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, (1965) 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158, if the defendant has performed sufficient purposeful acts in Indiana in relation to the contract. Myers' acts in Indiana resulted in contracts between the parties which the appellants allege Myers has breached. We find that the requirement of T.R. 4.4(A) that the action must arise from one of the acts enumerated therein has been met.

Since Myers' acts within Indiana constitute "doing any business" in Indiana and satisfy due process, the trial court's granting of Myers' motions to dismiss on the grounds of lack of personal jurisdiction is reversed.

*Issue Three*

The trial court granted Myers' T.R. 12(B)(6) motions on the grounds that the actions were barred by the statute of limitations. Appellants correctly state that once the trial court found it lacked subject matter jurisdiction, the court was without power to rule on the T.R. 12(B)(6) motions,

and therefore, its judgments on the issue are moot. *City of Hammond v. Board of Zoning Appeals*, (1972) 152 Ind.App. 480, 284 N.E.2d 119; *Cooper v. County Board of Review of Grant Co.*, (1971) 150 Ind.App. 232, 276 N.E.2d 533. They request that we reverse the trial court on this issue and remand the case. Ordinarily this would be the relief granted; however, "insofar as the same issue would arise on remand, in the interests of judicial economy and convenience to the parties this Court will adjudicate the merits of the plaintiff's cause of action." *Colvin v. Bowen*, (1980) Ind.App., 399 N.E.2d 835, 838.

When a defendant files a T.R. 12(B)(6) motion, the "complaint is not subject to dismissal unless it *appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts.*" (Original emphasis.) *State v. Rankin*, (1973) 260 Ind. 228, 230, 294 N.E.2d 604, 606. However, when the trial court considers matters outside the pleadings, then it must follow T.R. 12(B) which states in part:

"If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Indiana Rules of Procedure, Trial Rule 56(C) states in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to determine whether a genuine issue of material fact exists, the court will consider as true all facts alleged by the nonmoving party and will resolve all doubts against the moving party. *Krueger v. Bailey*, (1980) Ind.App., 406 N.E.2d 665. Summary judgment should not be used as a

substitute for trial in determining factual disputes. *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. Therefore, if conflicting evidence must be weighed by the court to reach a decision, summary judgment should not be granted. *Collins v. Dunifon*, (1975) 163 Ind.App. 201, 323 N.E.2d 264. Neither should summary judgment be granted if, although there is no factual dispute, the facts give rise to conflicting inferences. *Clayton v. Penn Central Transportation Co.*, (1978) Ind.App., 376 N.E.2d 524. However, summary judgment may be proper where there is no dispute or conflict regarding a fact which is dispositive of the action, even though conflicting facts on some elements of a claim exist. *Hayes v. Second National Bank of Richmond*, (1978) Ind.App., 375 N.E.2d 647, *trans. denied.*

The trial court found that the contracts were oral contracts, that they were governed by the laws of Tennessee, and that the actions were barred by the statute of limitations. The trial court's judgments, appellants contend, are erroneous since the contracts are in writing and should be governed by Indiana law, which has a twenty year statute of limitations for written contracts. In order to determine whether the actions are barred, we must determine what forum's substantive law governs the transactions, what statute of limitations is applicable, and whether the contracts are oral contracts as a matter of law.

Myers argues repeatedly that since he cashed the checks, which were sent by appellants, in Tennessee, that act constituted the last act necessary for the formation of the contract, and therefore, Tennessee law applies. Myers' contention that Indiana follows the *lex loci contractus* approach for choice of laws and his citation of *W. H. Barber Co. v. Hughes*, (1945) 223 Ind. 570, 63 N.E.2d 417, for support of this contention is erroneous. Judge Richman in *Barber*, 223 Ind. at 581, 63 N.E.2d 417 stated, "A contract 'is deemed to have been made in the state where the last act necessary to

make it a binding agreement takes place[,]' [Citations omitted]," not that the law of the place of contracting controls. In *Barber*, our supreme court applied the "most intimate contacts" approach[3] to determine the law governing the transaction. Since *Barber* this approach to choice of laws has been applied by this court in contract cases. *See, Clow Corp. v. Ross Township School Corp.*, (1979) Ind.App., 384 N.E.2d 1077; *Utopia Coach Corp. v. Weatherwax*, (1978) Ind. App., 379 N.E.2d 518. However, we do not need to determine the choice of laws question in the present case since the issue was not properly raised in the trial court. The manner in which a choice of law question must be raised in the trial court was discussed in *Jameson Chemical Co., Ltd. v. Love*, (1980) Ind.App., 401 N.E.2d 41, 44, 403 N.E.2d 928 (modified on other grounds):

> "[B]efore a trial court can determine whether the law of another state applies in a situation such as this where the parties have not agreed on that matter, a party must either offer evidence of the law of the other state or ask the trial court to take judicial notice of that law pursuant to the Uniform Judicial Notice of Foreign Law Act (hereinafter cited as UJNFLA) and Ind.Rules of Procedure, Trial Rule 44.1(B). Furthermore, before either of those alternatives may be exercised, 'reasonable notice must be given to the adverse parties either in the pleadings or otherwise.' IC 1971, 34–3–2–4 (Burns Code Ed.)." (Footnote omitted.)

Although Myers did cite to the trial court certain sections of the Tennessee Code which contained statutes of limitations of Tennessee, he made no attempt to offer evidence of the substantive law of Tennessee on contracts or request the trial court to take judicial notice of such law. Furthermore, all the case law cited by Myers in his appellate brief on the issue of whether the contracts were oral or written is from Indiana courts. Therefore, we will apply the laws of Indiana to the present case.

---

**3.** This approach has been called the "center of gravity" or "grouping of contacts" or "most significant relationships" rule. Leflar, American Conflicts Law § 149 (3d ed.1977).

 Myers alleges that the controlling statute of limitations is 48 Tenn.Code Ann. § 1645. He states the transactions are governed by the law of the state where the last act necessary to full and complete formation of the contracts is done, which is Tennessee. His assertion is incorrect. As we have discussed, Indiana does not follow the *lex loci contractus* approach to determine where the cause of action arose, and thus, which forum's substantive law is applicable. The choice of laws approach for contract actions in Indiana is the "most intimate contacts" approach. Appellants, on the other hand, contend the statute of limitations is a procedural question which is determined by the law of the forum. Our supreme court has stated in *Karvalsky v. Becker*, (1940) 217 Ind. 524, 532, 29 N.E.2d 560, 563:

> "The contract provides that no action on the contract shall be brought after the expiration of one year from the time such action accrues. This provision is void under the statute of Indiana, and the statute of limitations applies. The appellees contend that the law of West Virginia should control the time within which the action is brought, but it is well settled that statutes and rules governing the time in which actions may be brought affect only the remedy, and that the law of the forum will control."

*Accord, Horvath v. Davidson*, (1970) 148 Ind.App. 203, 264 N.E.2d 328; *Prudence Life Insurance Co. v. Morgan*, (1966) 138 Ind.App. 287, 213 N.E.2d 900. We need not determine this question, however, since this rule of law is applied only when the cause of action arose in a state other than the state in which the cause of action is brought. *See, Prudence Life Insurance Co. v. Morgan, supra.* In the present case, the cause of action arose in Indiana since we have already stated that Indiana substantive law applies. Consequently, the Indiana statute of limitations controls.

 Myers asserts that Indiana's borrowing statute [4] applies and thus these actions are barred in Indiana since they would be barred in Tennessee. In order for IC 34–1–2–6(b) to apply, the cause of action must have arisen without this state. Since the causes of action arose within Indiana in the present cases, IC 34–1–2–6(b) does not apply.

In order to determine whether Ind.Code 34–1–2–2, which provides for a twenty year limitation on actions based upon written contracts, or Ind.Code 34–1–2–1, which provides for a six year limitation on actions based upon oral contracts, applies it is necessary to examine the facts in each cause of action in light of the law of contracts. If the contracts are oral contracts as a matter of law as found by the trial court, then the actions are barred. However, if a material issue of fact exists as to whether the contracts are oral or written, then the trial court's judgments must be reversed.

Meyers assumes that his written promise to transfer is the written contract and states, "[t]he price was not included in the writing and therefore the agreement is partly written and partly oral. Contracts partly in writing and partly in parol are held to be parol contracts." (Appellee's Brief at 16.) Appellants allege the agreements were made in Indiana when Myers talked with them and then reduced to writing by Myers' written promise to transfer the stock. Neither contention is persuasive or accurate.

It is the gravemen of contract law that in order to form a contract there must be a meeting of minds of the parties to the contract. This meeting of minds or "manifestation of mutual assent almost invariably takes the form of an offer or proposal by one party accepted by the other party or parties." Restatement of Contracts § 22

---

**4.** Indiana Code 34–1–2–6(b) states: "When a cause of action has arisen without this state against a nonresident defendant, and the defendant does not maintain any agent in the state of Indiana for service of process or other person who, under the laws of this state, could be served with process as agent for the defendant and such cause has been fully barred by the laws both of the place where the defendant resides and of the place where the cause of action arose, such bar shall be a defense here."

(1932). An offer has been defined as "a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance." *Id.* § 24. However, the language used by a party may not constitute an offer, but instead be a price quotation or negotiations preliminary to an offer.

> "It is often difficult to draw an exact line between offers and negotiations preliminary thereto. It is common for one who wishes to make a bargain to try to induce the other party to the intended transaction to make the definite offer, he himself suggesting with more or less definiteness the nature of the contract he is willing to enter into. Besides any direct language indicating an intent to defer the formation of a contract, the definiteness or indefiniteness of the words used in opening the negotiation must be considered, as well as the usage of business, and indeed all accompanying circumstances."

Restatement of Contracts § 25, comment a, (1932). Often an oral quotation has been found to constitute preliminary negotiations because it lacked the definiteness required by the basic principles of contract law in order to constitute an offer. An offer must be "sufficiently certain to enable a court to understand what is asked for, and what consideration is to mature the promise." *Oedekerk v. Muncie Gear Works,* (7th Cir. 1950) 179 F.2d 821, 824.

With these principles in mind, we turn to the evidence in the record concerning the formation of the contracts. It is uncontradicted that Myers asked Naugle whether he wanted to purchase any of the stock at ten dollars ($10.00) per share, to which Naugle replied he would have to think about it. We fail to see how an oral contract was created out of this conversation. Myers' inquiry of whether Naugle wanted to buy some stock was not an offer. It failed to mention the quantity of stock which would be sold. Therefore, it was not sufficiently certain and constituted merely an invitation for an offer by Naugle. Naugle made no such offer at that time for he wanted to consider Myers' proposal. However, soon after the meeting Naugle wrote to Myers that he would purchase three hundred (300) shares of Boone's Favorite Foods stock for three thousand dollars ($3,000.00). Myers replied by sending a written promise to transfer the stock and by cashing Naugle's check. Under the circumstances, we find that Naugle's letter constituted a written offer and Myers' response a written acceptance. Although the terms of the contract do not specify the time and place of performance, this fact does not make the contract fatally defective, for the law will imply these terms. *See, Jay Clutter Custom Digging v. English,* (1979) Ind.App., 393 N.E.2d 230. Furthermore, "a contract need not be embraced in a single writing, but may be contained in letters constituting a correspondence between the parties, . . ." *Thames Loan & Trust Co. v. Beville,* (1885) 100 Ind. 309, 314. *See, Edwards Manufacturing Co. v. Stoops,* (1913) 54 Ind.App. 361, 102 N.E. 980; 17 Am.Jur.2d, *Contracts* § 264 (1964). Such a written contract can be found in the correspondence between Naugle and Myers.

A material issue of fact also exists as to whether there was a written contract between Van Lue and Allen and Myers. Van Lue claims she stated orally to Myers that she would buy two thousand dollars ($2,000.00) of the stock and then later wrote to Myers for two thousand dollars ($2,000.00) more of the stock. Myers contends Van Lue's request for this stock was made in a letter sent by Van Lue in which she requested the stock be equally divided between her and Allen. Myers introduced a copy of a note written to him by Van Lue which stated, "Please divide shares of this amount equally for Shawn and I." After receiving this note, Myers sent to Van Lue and Allen written promises to transfer to each two hundred (200) shares of Boone's Favorite Foods stock. These written letters can be sufficient to constitute a written contract. By examining them, one is able to determine the subject matter of the contract, the quantity, and the price. Although the time of performance is not stated, this is not fatal for as we previously stated, the law will imply this term.

Suyemasa testified that Myers discussed the stock with him and quoted a price of ten dollars ($10.00) per share. Myers then asked Suyemasa how many shares he would like to have. Suyemasa replied that he would like about four hundred (400) shares. However, within a week Suyemasa wrote to Myers requesting two thousand four hundred (2,400) shares of stock and enclosed a check. Myers replied to Suyemasa's request by sending to Suyemasa a written promise to transfer two thousand four hundred (2,400) shares of the stock. Myers asserts that the contract was partly oral and partly written. The oral part, he states, occurred in Indiana, while the written part was his written promise to transfer the stock. If Suyemasa's reply that he would take about four hundred (400) shares of stock is an offer, then Myers' written promise is not an acceptance because Myers promised to transfer a larger quantity of stock than Suyemasa orally requested. There could not have been a meeting of the minds as to the subject matter of the contract.

 We believe that a material issue of fact does exist here as to whether the Suyemasa-Myers contract was oral or written. Although Suyemasa's request for four hundred (400) shares of stock could constitute an offer, the record does not reflect that Myers ever accepted it. Subsequently, Suyemasa requested a larger amount of stock from Myers. This written request contained the quantity of stock being purchased and the price of the stock. Myers, in writing, agreed to transfer this amount of stock to Suyemasa. As we have stated, a contract may be found in the written correspondence between the parties, and we believe that there is an issue of fact of whether the contract between Myers and Suyemasa was contained in their written correspondence.

Having found that a material issue of fact exists in each cause of action brought by appellants, we hold that the trial court erred in granting Myers' T.R. 12(B)(6) motions. Therefore, the trial court's judgments are reversed and the case is remand-

ed for further proceedings not inconsistent with this opinion.

Judgments reversed.

NEAL, P. J., and ROBERTSON, J., concur.